**James Lee PARKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–84–087 CR.**

Court of Appeals of Texas,
Beaumont.

May 8, 1985.

Thomas Roebuck, Beaumont, for appellant.

John R. DeWitt, Asst. Criminal Dist. Atty., Beaumont, for appellee.

OPINION

BROOKSHIRE, Justice.

By indictment, the Appellant was charged with the theft of a bulldozer-front end loader of the value of at least $750.00 but less than $20,000.00 with the intent to deprive the owner of the dozer. Two enhancement paragraphs asserted that Appellant had been convicted of felony theft occurring on July 20, 1978, and also convicted finally of a felony theft occurring on September 7, 1979. The jury's verdict was guilty. The State proved one prior conviction resulting in 15 years confinement plus a $5,000.00 fine.

Appellant, at one time, owned and operated a mechanic's repair shop in Port Arthur. He took possession of the dozer for repairs, receiving $825.00 cash in advance. The dozer was in the repair shop for something like 1½ to 2 years. Later, the shop was closed. The dozer was transported from Appellant's premises by Willie Dankins at the request of Henry Walker. It was displayed openly for some 6 weeks when it was purchased by Glenn McNeel.

Leroy J. Broussard, Sr., claimed ownership. No title certificates were delivered by Broussard to either Dankins, Walker or McNeel. Two of the transactions were accompanied by bills of sale. Mr. Broussard's son informed him that the dozer was missing from Appellant's repair shop premises. Broussard located the dozer and reported it stolen. It was found at McNeel's house in Port Neches.

McNeel worked for a marine service company. The dozer formerly was located in a

junkyard only about 15 feet from McNeel's place of work, where it was plainly visible and being offered for sale. This junkyard was operated for a period of time by Dankins. McNeel testified that he purchased the dozer from Walker for $250.00.

Dankins related that he picked up the dozer at Appellant's repair shop. Dankins has verified that all his dealings were directly with Walker. Apparently, Dankins knew Appellant but did not discuss the dozer with him. Appellant's business was closed when Dankins picked up the dozer.

Henry Walker testified for the prosecution. He was carefully warned by the trial court that he could possibly be charged with theft. Walker's rights under the Fifth Amendment were carefully explained to him by the trial court. He willingly testified. The court below instructed the jury on the issue of an accomplice witness as to Walker. Walker testified that Appellant told him to pick up the dozer and to sell it to satisfy some money owed to Walker by Appellant. Walker acknowledged that he had Dankins pick up the dozer and take it to Dankins' junkyard for sale. Walker reiterated that he sold the dozer to McNeel for $250.00. Walker delivered to McNeel a bill of sale. Walker did not receive a bill of sale or title to the dozer. A police officer with the Port Arthur department testified that Appellant had never reported the dozer stolen.

A new attorney for the Appellant was appointed for the appeal. The able brief argues that the different trial lawyer was ineffective; that insufficient evidence cannot support a conviction because Walker was an accomplice; that the trial court erred in instructing the jury that punishment could be assessed as a habitual offender; and, that the prosecutor's argument at the punishment stage, commenting on the prior convictions, requires a reversal.

Appellant's brief argues that he was denied effective assistance of counsel for one isolated decision, that being the failure to challenge for cause juror Williford. During voir dire the record shows:

"MRS. WILLIFORD: My feeling is he is the best witness.

"[DEFENSE COUNSEL]: Certainly, no doubt about that. My question is, if he decides not to be his own best witness, or if I decide that he should not take the stand, would you find him guilty or could you not find him not guilty?

"MRS. WILLIFORD: Well, I think my decision would be what is he hiding.

"[DEFENSE COUNSEL]: So your assumption would be that he is hiding something if he doesn't take the stand?

"MRS. WILLIFORD: Exactly."

 The appeals attorney vehemently and dogmatically argues that the failure to challenge Williford for cause constitutes ineffective assistance of counsel and is definitely violative of Appellant's federal Sixth Amendment rights. It is true that Mrs. Williford was later elected forelady of the trial jury and was apparently an effective member thereof. If we agree with this contention, we create a "catch-22" situation. We mean by this that, in any voir dire examinations, a skillful, aggressive advocate could elicit an answer from a venireperson to the effect that if the defendant failed to take the stand then that failure would be held against him. We confidently declare that the trial counsel was extremely ethical and conscientious. We think he would have had no designs to create a "catch-22" trap.

However, in future cases, it reasonably could become a trial tactic to elicit from some member of the jury panel that if the defendant did not take the stand, then he must be hiding something and, since the defendant is probably the person who knows more about the facts of the case, his failure to testify would predispose the juror to vote for his guilt. If this is developed on voir dire an aggressive attorney for any defendant could then fail to challenge and probably the State would not challenge nor would the judge, sua sponte, challenge or remove the venireperson. Hence, built-in reversible error would have been calculated and invited by the defendant's attorney. We simply cannot adopt

this as a rule of decision in the Ninth Supreme Judicial District. Hence, we stress and insist that evidentiary hearings, in future cases, must be adequately developed to show and shed ample light on why the trial counsel for the defendant did not challenge such venireperson for cause. Unless we have the benefit of this evidentiary record, we are totally in the dark in passing on this point.

Later, Mrs. Williford acknowledged that she had been a victim of a theft but, apparently, her having experienced a theft did not make her "feel close to a victim". We do not know trial counsel's strategy before the jury. He may have had a special reason for accepting Williford. At voir dire, he may have decided that Williford would be "light" on the Appellant as to punishment if the jury found guilt. If the strategy was to have the Appellant testify, then trial counsel could have logically concluded that Williford would have decided that the Appellant had nothing to hide. Thus, Williford would have been favorable to the defense. There could have been reasons and factors not affirmatively appearing in the record such as her appearance, demeanor, tone of voice or mannerisms.

■ We are to test the effectiveness of counsel from the trial as a whole. *See Cannon v. State,* 668 S.W.2d 401 (Tex. Crim.App.1984); *Romo v. State,* 631 S.W.2d 504 (Tex.Crim.App.1982). We believe that effective assistance of counsel was afforded especially in view of the punishment assessed.

■ Moreover, Appellant has not shown that a different result would have been reached with effective counsel and, but for trial counsel's alleged professional judgmental error, clearly Appellant has not shown—with Williford struck—that the result of the proceeding would have been different. We perceive that a two-prong test of effective assistance of defense counsel requires (1) reasonably effective assistance; (2) reasonable probability of a different result or verdict. This two-prong test has not been met by Appellant; he has a burden to do so by a preponderance of the

evidence. *Strickland v. Washington,* 466 U.S. ——, at ——, —— 104 S.Ct. 2052, at 2063, 2064, 80 L.Ed.2d 674, at 692, 693 (1984). From *Strickland, supra,* we quote:

"In giving meaning to the requirement, however, we must take its purpose—to ensure a fair trial—as the guide. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."

. . . .

"More specific guidelines are not appropriate. The Sixth Amendment refers simply to 'counsel,' not specifying particular requirements of effective assistance. It relies instead on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions. . . ."

The trial below was certainly an adversary process. The Sixth Amendment of the United States Constitution does not require a perfect trial absolutely devoid of all errors or mistakes. Particularly apt from *Strickland, supra,* 466 U.S. at page ——, 104 S.Ct. at page 2065, 80 L.Ed.2d at page 694, is:

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to secondguess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. *Engle v. Issac,* 456 U.S. 107, 133–134, 71 L Ed 2d 783, 102 S Ct 1558 [1574–1575] (1982). . . ."

■ As a "sunburst" rule, in this appellate district in the future, we would admonish appellate counsel that, when there has been a change in counsel, an evidentiary hearing should be held to ascertain from

the trial lawyer why he made certain decisions. In order for us to exercise our "judicial scrutiny of counsel's performance", following the mandates and dictates of *Strickland, supra,* we should know what trial counsel has to say on the point. We perceive this evidentiary hearing would benefit materially the criminal justice system in our state. We know that such evidentiary hearings on the Sixth Amendment took place in *Cannon v. State, supra.*

 This record and the evidence and testimony contained in it does support the conviction. Where there is a fact issue as to whether a witness is an accomplice, then submitting the issue to the jury is correct and sufficient. This is so even though the evidence might appear to preponderate in favor of the conclusion that the witness is actually an accomplice. *Colunga v. State,* 527 S.W.2d 285 (Tex.Crim.App.1975); *Ward v. State,* 520 S.W.2d 395 (Tex.Crim.App. 1975). Walker was not an accomplice witness as a matter of law. But, there is ample corroboration from other witnesses, other than Walker, and from the physical facts to sustain this conviction, even if Walker is looked upon as an accomplice witness. We quote from *Carrillo v. State,* 591 S.W.2d 876 (Tex.Crim.App.1979), at page 883:

"To test the sufficiency of the corroboration of an accomplice witness, one must eliminate from consideration the evidence of the accomplice witness, and then examine the evidence of the other witnesses to ascertain if it is of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise, it is not. *Brown v. State,* 561 S.W.2d 484 (Tex.Cr.App.1978); *Caraway v. State* [550 S.W.2d 699 (Tex.Cr.App.1977)], supra; *Etheredge v. State,* 542 S.W.2d 148 (Tex.Cr.App.1976); *Reynolds v. State,* 489 S.W.2d 866 (Tex.Cr.App.1972). The corroborative testimony need not directly link the accused to the crime or be sufficient in itself to establish guilt. *Lyman v. State,* 540 S.W.2d 711 (Tex.Cr.App.

1976); *Bentley v. State,* 520 S.W.2d 390 (Tex.Cr.App.1975); *Black v. State,* 513 S.W.2d 569 (Tex.Cr.App.1974); *Cherb v. State,* 472 S.W.2d 273 (Tex.Cr.App.1971). The corroboration need only make the accomplice's testimony more likely than not. *James v. State,* 538 S.W.2d 414 (Tex.Cr.App.1976); *Bentley v. State,* supra; *Warren v. State,* 514 S.W.2d 458 (Tex.Cr.App.1974)."

In different ways, Broussard's, Dankins' and McNeel's testimony corroborated Walker's story.

 At the punishment stage, the charge of the court, after dealing with the two paragraphs alleging prior felonies for enhancement, read:

"Then you will so state in your verdict, and assess punishment as Habitual Offender."

However, no form of verdict for habitual offender was submitted to the jury. The Appellant did not make an objection to the court's charge on punishment nor to the various verdict forms handed to the jury. Further, the trial court carefully admonished and warned the jury, verbally, upon objection by the competent trial lawyer:

"I will sustain part of it in the sense that the jury is not to consider the fact that the State did not prove two prior convictions. They have alleged two but they have only proved one. In your consideration, members of the jury, you can only consider he has been convicted one time."

At the beginning of the punishment phase, the Appellant pleaded "true" to having been finally convicted of felony theft in Cause No. 36,422, in the 252nd District Court of Jefferson County. Cause No. 36,-422 was the only prior conviction submitted to the jury in their forms of verdict. Later, counsel for Appellant withdrew the "true" plea. The Appellant did not. Nevertheless, Appellant's trial counsel stipulated to the introduction and admissibility of the "pen packet". We do not find reversible error. We certainly do not find fundamental error. These irregularities did not deprive Appellant of a fair trial.

The jury argument by the prosecution did not constitute reversible error. We overrule Appellant's grounds of error and affirm the judgment and sentence.

AFFIRMED.