Roderick Dewayne GAINES, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–90–00725–CR.

Court of Appeals of Texas, Dallas.

June 11, 1991.

Discretionary Review Refused Oct. 2, 1991.

Bruce Anton, Dallas, for appellant.

Jeffery B. Keck, Dallas, for appellee.

Before STEWART, THOMAS and MALONEY, JJ.

## OPINION

THOMAS, Justice.

A jury convicted Roderick Dewayne Gaines of the offense of burglary of a habitation and assessed punishment, enhanced by a prior felony conviction, at ninety-nine years' confinement and a $10,000 fine. In three points of error, Gaines generally contends that the trial court erred in: (a) determining that the State did not exercise its peremptory challenges on two veniremembers because of race in violation of *Batson* [1] and article 35.261 of the Texas Code of Criminal Procedure; and (b) refusing to require the production of the prosecutor's jury selection notes. We disagree. Accordingly, the trial court's judgment is affirmed.

### *BATSON* CHALLENGES

In the first two points, Gaines contends that the trial court erred in overruling his objections to the prosecutor's use of peremptory challenges to exclude two black veniremembers. We note at the outset that Gaines is black. Although the State peremptorily struck seven blacks, Gaines complains only of the State's exercise of

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

strikes against Carolyn Campbell and Bobby Williams. We note further that five black veniremembers served on the jury which convicted Gaines.

### A. Standard of Review

 In order to invoke the protection of *Batson*, a defendant must raise an inference of purposeful discrimination, and the trial court must determine that a prima facie case of discrimination exists by virtue of the State's use of its peremptory challenges. A defendant establishes a prima facie case of discrimination by showing:

1. that he is a member of a cognizable racial group;
2. that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire; and
3. that these facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the veniremembers on account of their race.

*Batson*, 476 U.S. at 96, 106 S.Ct. at 1722–23; *Tennard v. State*, 802 S.W.2d 678, 680 (Tex.Crim.App.1990); *see also* TEX.CODE CRIM.PROC.ANN. art. 35.261 (Vernon 1989). When a defendant establishes a prima facie case, the burden shifts to the State to come forward with racially neutral explanations of why it exercised peremptory challenges against veniremembers of the same cognizable racial group as the defendant. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723; *Tennard*, 802 S.W.2d at 680. The trial court must then examine each of the prosecutor's reasons for striking a potential black juror within the circumstances of the particular case to determine whether the neutral explanation for the strike is really a pretext for a racially motivated peremptory challenge. In making this determination, the trial court must ascertain whether the prosecutor has articulated a "clear and reasonably specific" explanation of "legitimate reasons" for striking the black veniremember. *See Batson*, 476 U.S. at 98, 106 S.Ct. at 1723–24. The trial court's determination that the prosecution has rebutted the prima facie case will not be reversed on appeal unless it is clearly erro-

neous. *Whitsey v. State*, 796 S.W.2d 707, 727 (Tex.Crim.App.1989) (op. on reh'g); *Tennard*, 802 S.W.2d at 680. "A finding is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Whitsey*, 796 S.W.2d at 721 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). In order to sustain the trial court's findings, we must find that, as to *each* veniremember struck, the trial court's decision was not clearly erroneous, for the use of one purely racially motivated strike is prohibited by *Batson*. *Whitsey*, 796 S.W.2d at 727.

### B. Prima Facie Case

 On appeal, the State vigorously contends that Gaines failed to establish a prima facie case. We note, however, that at trial the State offered to explain its peremptory strikes against the black veniremembers. A prima facie case represents "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Tompkins v. State*, 774 S.W.2d 195, 201 (Tex.Crim. App.1987), *cert. denied*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989). The question of whether a defendant established a prima facie case normally is not a concern subject to appellate review. *Dewberry v. State*, 776 S.W.2d 589, 591 n. 2 (Tex.Crim.App.1989). Because the State gave its reasons for peremptorily striking the veniremembers, we do not concern ourselves with whether Gaines established a prima facie case of racial discrimination and, instead, examine the prosecutor's explanations to determine whether the trial court's determination that the strikes were race-neutral was clearly erroneous.

### C. General Voir Dire

 Race and racial issues were introduced during the general voir dire portion when the prosecutor discussed the fact that the local media had reported on studies suggesting that black criminal defendants receive unfair treatment in Dallas County.

Specifically, the prosecutor stated to the venire panel:

> Ladies and gentlemen, a lot of things have been written and said here in Dallas County and across the nation about black defendants and the right to a fair trial and what type of punishments [they receive]. There have been a lot of studies and words spoken and articles printed and a lot television programs played.
>
> Some people believe either based on what they read or hear or what they have seen or what's happened to them in their personal experience that blacks in the criminal justice system are more likely to be convicted than a white person.

The prosecutor then asked each row of veniremembers whether they believed that black defendants in Dallas County are more likely to be convicted than other defendants. Those veniremembers who responded that they had such beliefs were individually questioned. This same line of inquiry continued when the prosecutor stated:

> There's another question that goes along with it. Usually if you believe evidence that shows a black is more likely to be convicted you're probably going to answer yes to this question. If you believe blacks are more likely to be convicted, the other question is do you believe blacks are more likely to receive a harsher sentence than non-blacks in the criminal justice system?

Again the prosecutor asked each row of veniremembers whether they held such beliefs and those who answered affirmatively were individually questioned.

> Defense counsel raised the issue again during his portion of the voir dire when he stated:

> You're entitled in my opinion, and I hope I'm not misstating the law, that blacks are more likely to be convicted than whites and you're entitled to believe if that is your belief, that when they are convicted [their] sentences will be higher or conversely, that [their] sentences will be lower, if that's the way you believe.
>
> I was reading an article in the New York City Times day before yesterday on David Duke, the Legislator in Louisiana. So there [are] all kinds of—this jury and this cross section of the community is a big cross section and it's supposed to be a big cross section and all of our citizens are entitled to serve on the jury.

## D. Veniremember Campbell

In the first point, Gaines contends that the State exercised a peremptory challenge to exclude Campbell based upon her race. Campbell was questioned individually because she had raised her hand during the general voir dire indicating that she believed that black defendants in Dallas County receive unequal treatment. During individual questioning of Campbell, the following occurred:

> [STATE]: You raised your hand in response, Mrs. Campbell, to the question about whether you though[t] blacks were more likely to be convicted than other people; is that correct?
>
> [CAMPBELL]: Yeah.
>
> [STATE]: Did you also raise your hand in response to the fact about blacks more likely to receive a heavier prison sentence?
>
> [CAMPBELL]: That's the one I raised my hand to, the second question.
>
> [STATE]: Can you tell us why you have that belief? Is it something you read or have seen, something that's happened in your neighborhood? Exactly how did you come to form that opinion?
>
> * * * * * *
>
> [CAMPBELL]: Just it seems like most of the time when blacks are convicted of crimes or whatever it's like the punishment is more stricter [sic].
>
> * * * * * *
>
> [STATE]: The fact that you believe that way, as I said earlier, the question now becomes can you set that belief aside or do you think that in some way being totally fair and impartial to both sides might affect your decision in the guilt-innocence phase of a trial or if you found that person guilty, in the punishment phase of a trial?

[DEFENSE COUNSEL]: We object to the question. We do not believe that the juror has to set any belief aside in this respect.

[THE COURT]: If it affects their impartiality, they do, Counsel. The oath has a very hollow ring to it. The lady can answer the question however she feels.

[CAMPBELL]: I feel like I could be fair in a trial. I won't go by how I feel and, you know, the evidence or whether that comes out in a trial. I don't think I will be swayed one way or the other as far as the way I feel. The question—you asked the question and I just answered the question and I feel that blacks—

\* \* \* \* \* \*

[CAMPBELL]:—are punished more than—are given harsher punishments than other races. That's just the way I feel about it.

[STATE]: And nobody is objecting to how you personally feel. The question becomes something different now. Is that belief going to affect your deliberations in a criminal trial involving a black defendant?

[CAMPBELL]: I don't think it will affect me. I think I can be fair.

[STATE]: The question is can you tell us that you will not let your beliefs affect your verdict?

[CAMPBELL]: Yes, my beliefs won't affect my verdict.

[STATE]: Are you sure of that?

[CAMPBELL]: Uh-huh.

\* \* \* \* \* \*

[DEFENSE COUNSEL]: You would judge th[e] case with a black defendant just like you would judge a case with a white defendant, wouldn't you?

[CAMPBELL]: Yes.

During the *Batson* hearing, the prosecutor explained that he struck Campbell because he thought that her answers were unresponsive. The prosecutor argued that, when he asked whether her opinions would affect her decision, she replied only that

she would "be fair," but she would not directly answer the question that he asked. The trial court held that, although it was a "close question," it was "satisfied with the racially neutral strike on [Campbell]."

Gaines argues that, since Campbell stated that her beliefs would not affect her verdict, the State should not have exercised a peremptory strike against her. He asserts that reasons such as "nonresponsive" are typical of voir dire examinations and that such responses, which may depend on demeanor, present a special problem because they are impossible to meaningfully review on appeal. He contends that such responses represent the type of "sham justification for which red flags have been previously raised."

The trial court was in the best position to observe Campbell as she responded to the prosecutor's questions. In fact, the trial court stated that it had observed the veniremembers' demeanor during individual questioning. Such observations are crucial to determining the prosecutor's credibility in claiming that Campbell was "unresponsive." Under the clearly erroneous standard, the trial court's determination of the prosecutor's credibility is given great deference by the reviewing court. *Whitsey*, 796 S.W.2d at 725 n. 11.[2] From the record before us, we cannot say that the trial court's acceptance of the prosecutor's explanation is clearly erroneous. The first point is overruled.

### E. Veniremember Williams

In the second point, Gaines contends that the State executed a peremptory challenge to exclude Williams from the jury based upon his race. During the general voir dire, Williams also indicated that he believed that black defendants receive unequal treatment in Dallas County. Following the individual questions and answers, the prosecutor gave the following reasons for peremptorily striking Williams:

Mr. Williams stated that he had a personal opinion based on reading statistics

---

**2.** We recognize that this Court is *not required* to accept the trial court's determination of the prosecutor's credibility.

and other indications that he felt blacks were more likely to be convicted and blacks were more likely to receive a harsher sentence. Either one of those opinions I do not have trouble with.

Mr. Williams, however, became somewhat antagonistic at the bench, somewh[at] short and abrupt with his answers as opposed to juror number 16, a black female, Mrs. Williams, who had basically the same responses as Mr. Williams did. She said them in a much more agreeable manner. She did not seem to take offense to my questions. Mr. Williams did seem to take offense at my questions and for that reason I struck him.

After defense counsel disagreed with the prosecutor's statements concerning Williams' demeanor, the trial court stated: "Well, I observed the demeanor of all of these. I think there's enough merit to that but that's a very close question on Mr. Williams."

■ Prosecutors may rely on nonverbal as well as verbal aspects of a veniremember's answers in assessing whether a veniremember is hostile to the prosecutor in a particular case. *See Sanchez v. State,* 797 S.W.2d 951, 956 (Tex.App.—Dallas 1990, no pet.); *Anderson v. State,* 758 S.W.2d 676, 677 (Tex.App.—Fort Worth 1988, pet. ref'd). Where the State's explanations for its peremptory challenges directed at a *Batson*-protected veniremember are tied to the credibility of the prosecutor, a reviewing court "must rely upon the trial court's observation of the venire[member's] answers and demeanor relative to such explanations." *Tennard,* 802 S.W.2d at 682. Again the trial court was in the best position to evaluate Williams' demeanor. After reviewing the record and giving deference to the trial court's determination of the prosecutor's credibility, we cannot say that the ruling was clearly erroneous. The second point is overruled.

### PROSECUTOR'S JURY SELECTION NOTES

■ In the third point, Gaines complains that the trial court erred in refusing to require the prosecutor to tender his jury selection notes during the *Batson* hearing. Gaines argues that without these notes he was not able to effectively cross-examine the prosecutor regarding his peremptory challenges. The following exchange occurred during defense counsel's cross-examination of the prosecutor:

[DEFENSE COUNSEL]: Is it not true that you're using notes to refresh your memory as to this?

[STATE]: Certainly is.

[DEFENSE COUNSEL]: Is it true?

Your Honor, may I ask Counsel to tender notes that he has used?

[THE COURT]: No, you may not, not if that's a work product of his in this trial. That's unreasonable, Counsel.

[DEFENSE COUNSEL]: Even though he's using them to refresh his memory?

[THE COURT]: Yes, ma'am.

[DEFENSE COUNSEL]: Then I have nothing further.

[THE COURT]: I take it—I understood there was an objection to her having access to the State's work product.

[STATE]: Yes, Your Honor.

[DEFENSE COUNSEL]: Your Honor, we ask that the prosecutor's notes be placed into the record for purposes of appeal.

[STATE]: We object to that as violating the work product rule.

[THE COURT]: If they're truly work product—let me put it this way. Keep the notes intact and the [c]ourt will take a look at them in camera sometime here before we get through and make that decision.

Since the prosecutor acknowledged that he was using his notes to refresh his memory, Gaines asserts that he was entitled to the notes under the holding of *Salazar v. State,* 795 S.W.2d 187 (Tex.Crim.App. 1990).[3] While Gaines argues that these notes could be useful in corroborating or impeaching the explanations offered by the

---

**3.** Because we conclude that Gaines failed to preserve this point, it is unnecessary to address the State's contention that the notes constituted work product.

prosecutor for his use of peremptory challenges, we are unable to evaluate this claim since the notes are not before us. We conclude that Gaines failed to preserve error, if any. It was Gaines' burden to include in the record all matters that illustrate the error he asserts. Tex.R.App.P. 50(d); *Hawkins v. State*, 793 S.W.2d 291, 292 (Tex.App.—Dallas 1990, no pet.). Further, Gaines failed to perfect a bill to include the prosecutor's notes in the record as is required to preserve error. Tex. R.App.P. 52; *Hawkins*, 793 S.W.2d at 293. The third point is overruled, and the trial court's judgment is affirmed.