William Arthur KNIGHT, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–91–210 CR.

Court of Appeals of Texas,
Beaumont.

Oct. 14, 1992.

Michael A. McDougal, Conroe, for appellant.

Peter C. Speers, Dist. Atty., Kathleen Hamilton, Asst. Dist. Atty., Conroe, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the felony offense of Burglary of a Habitation. The indictment further alleged six prior convictions raising appellant's punishment status to that of a habitual offender.

Following a finding of "guilty," the jury further found the enhancement allegations "true" and sentenced appellant to life in the Institutional Division of the Texas Department of Criminal Justice. Appellant raises four points of error on appeal, the first two points complaining of federal and state constitutional violations of his right to effective assistance of counsel. Our discussion of appellant's first two points of error will preclude the need to consider his remaining two points, neither point complaining of the sufficiency of the evidence to sustain the conviction.

At the outset, we note, as does appellant in his brief, that Texas' constitutional and statutory provisions dealing with ineffective assistance cases do not create a standard that is *more* protective of a defendant's rights than the standard put forward by the United States Supreme Court in *Strickland v. Washington.*[1] *Vasquez v. State*, 830 S.W.2d 948, 949 (Tex.Crim.App. 1992); *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986). As such, we will follow the *Strickland* standards in our discussion of appellant's complaints.

*Strickland* requires a two-step analysis. First, the reviewing court must decide whether trial counsel's performance failed to constitute reasonably effective assistance. More specifically, the question is whether the attorney's representation fell below an objective standard of reasonableness under prevailing professional norms. *Strickland, supra,* 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 693–94. If the attorney's performance did fall below the accepted standard, the reviewing court must then decide whether there is a reasonable probability that the result of the trial would have been different but for trial counsel's deficient performance. *Id.,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. *Strickland* defines a "reasonable probability" as "probability sufficient to undermine confidence in the outcome." *Id.*

In the instant case, appellant complains of three instances of ineffective assistance by trial counsel. We need look no further

1. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

than the first instance: the voir dire portion of the trial. Appellant avers that the record reflects eleven jurors shown to be excludable for cause yet trial counsel made no challenges for cause. The record reflects that trial counsel made no objections whatsoever during the voir dire proceedings.

In examining the entirety of the voir dire proceedings, a mere seventy-four pages, it is not abuse of hyperbole to characterize the proceedings as a three-ring circus. Early in its portion of the voir dire, the State attempted to qualify the venire with regard to the range of punishment for burglary of a habitation. The following is taken from the State's voir dire dealing with the punishment range:

> (the State) As Judge Alworth told you, burglary of a habitation is a first degree felony. The only thing more serious than that offense is capital murder, which carries the death sentence or the possibility of the death sentence. Okay? The same catagory (sic) as aggravated sexual assault. It is in the same catagory (sic) as murder. It is in the same catagory (sic) as aggravated robbery. Okay? Is there anybody that feels like burglarizing a house should not be in the same catagory (sic) as those things I just listed? It ought to be something a little bit less than that? Okay.
>
> There's some people that have described burglary of a habitation as a capital murder waiting to happen. A capital murder could be if you burglarized the house and killed the person in the house. Then that becomes capital murder. If you don't kill the person, then it is burglary of a habitation. Anybody feel it should be less than a first degree felony? All right. Everybody feels it is in the right area? Okay.
>
> A first degree felony carries from five years to 99 years or life and a $10,000 fine. Anybody feel that that should be different? Maybe the high end of that 99 to life should be lower? Okay. Number 38?

> MR. THRASHER: I think it should carry the maximum.
>
> Q. All the time?
>
> A. All the time.
>
> (the State) Okay. Number 7?
>
> MR. STEVENSON: I agree.
>
> (the State) And 18?
>
> MR. TUTTER: I agree.
>
> A JUROR: I agree.
>
> (the State) 26, 31? Did you mean to put that up?
>
> A JUROR: No. I was just scratching.
>
> (the State) You have bought the boat. If I am reading you right, what you are saying is if a person is convicted of burglary, it should be life in prison. No short end?
>
> MR. STEVENSON: You don't accidently rob a house.
>
> (the State) That's what y'all are saying?
>
> (WHEREUPON THE JURORS ADDRESSED INDICATE YES.)
>
> (the State) Okay. Are you saying you don't have an open mind about the whole thing? That you could not ever like—well, I can't ask you about this particular case, but in every single burglary your punishment, no matter what you heard about the defendant, there's nothing that would ever make you consider something less than that?
>
> A JUROR: If the defendant is found guilty, the maximum.
>
> (the State) Okay.
>
> A JUROR: Absolutely.
>
> (the State) That's how 26 feels. 18 feels. 16, 25. Okay....

It is obvious that at this point in the voir dire, the situation was beginning to get out of hand. Trial counsel, however, did not voice a single objection or attempt to have the very strong opinions of the various jurors heard up at the bench and out of the presence of the rest of the venire. Indeed, trial counsel then permitted the State to virtually poll the venire about what can only be described as public policy matters, an issue not really related to whether or not these potential jurors could follow the law in the trial court's instructions. *See,*

*Trevino v. State*, 815 S.W.2d 592, 601 (Tex. Crim.App.1991) vacated and remanded on other grounds, 503 U.S. ——, 112 S.Ct. 1547, 118 L.Ed.2d 193 (1992). We now resume with the State's voir dire:

> (the State) Okay. Mr. Korkmas, start with you because you are number one. How do you feel about how we punish people and the criminal justice system? If you could change anything, what would you change?
>
> MR. KORKMAS: I don't think I would have as many paroles as we're having.

This question and response then led several other persons on the venire to state that they too were not in favor of the "revolving doors" of the criminal justice system in Texas. This issue culminated in the following exchange:

> (the State) Okay. All right. Ms. Gray?
>
> MS. GRAY: I am sure everybody feels the same. We're all in the society and feel the revolving door in Texas is just ridiculous.
>
> (the State) Anybody disagree with that so I don't have to go through that? Does anybody pretty much disagree? All tired of the revolving door? Anybody have other ideas other than prison that we can punish people instead of sending them to prison? I know what your's (sic) is.
>
> A JUROR: *Put them to death.* (emphasis ours)

In spite of that rather shocking response, trial counsel remained silent. The State was permitted to continue its voir dire in this sort of sensationalized television talk-show format that we have set out above.

Unfortunately for appellant, the situation did not improve, if that was ever possible, when his counsel conducted voir dire. The following are excerpts taken from the remaining twenty-two pages of the voir dire proceedings by appellant's trial counsel:

> (trial counsel) So, to my question then, do you believe—do you have trouble believing that a person is innocent until proven guilty?
>
> (Juror Tutter) I feel it would be hard to get indicted unless you weren't innocent.
>
> ....
>
> (trial counsel) See the evidence? So, you could keep your mind open until the evidence, at least?
>
> (Juror Tutter) That's hard to say. I find it hard to believe that somebody could get indicted through a Grand Jury and still be completely innocent.
>
> Q. So, in your mind is that an impossible situation that a person—all people indicted? Are you saying that all people indicted are guilty?
>
> A. Yes.
>
> (trial counsel) Okay. Number 7? Yes?
>
> MR. STEVENSON: I pretty much agree with him.
>
> ....
>
> (trial counsel) Anyone else on the second row? Anyone else on the second row share that opinion that if a person is indicted, they are in fact guilty of the offense? What about the third row, and finally—number 32?
>
> MR. MORGAN: Probably. Yeah. I have a feeling that they are probably guilty.
>
> ....
>
> (trial counsel) What if the Court instructed to you that the law is that the State must prove each and every element, all right? That's the law. Can you follow the law?
>
> (Juror Korkmas) If I had to, I would. Yeah.
>
> (trial counsel) All right. Anyone on the first row? I need your opinions about this. Okay, that's Mr. Robert Stevenson?
>
> MR. STEVENSON: After hearing all the evidence, and the element that you used that he wasn't exactly in Montgomery County?
>
> Q. As a forsay (sic)?
>
> A. As forsay (sic) I would have to go with the gut feelings, you know. You are talking the first thing asked us are we good moral people, moral character, moral people go with gut feelings.

Q. Did you know if you are a juror you are swearing to uphold the law and if the law says that you could follow the law—

A. No. If the law says—if he did it beyond a reasonable doubt.

Q. Beyond a reasonable doubt.

A. Beyond a reasonable doubt but there was a loop hole because he had one foot over here instead of over here I would find him guilty.

Q. So, in other words?

A. I believe if he did the crime he should do the time.

MS. STRAWN: I agree with him.

. . . .

(trial counsel) Those are the elements of the offense that the State has the burden of proving. I am just trying to find out if anyone is going to have a problem with holding the State to its burden, and if the State does not prove its burden beyond a reasonable doubt all of those elements, that the defendant must be found not guilty. How many people on the third row would have a problem with holding the State to its burden? Okay. That's Anita Langford. Okay. And also Larry Hope?

MR. HOPE: Yes.

Q. What would you have a problem with?

A. As far as I am concerned, the State only has to prove three elements. That Mr. Knight entered Mary Lake's house without permission with intent to commit burglary. As far as I am concerned, that would be the only thing that they would have to prove.

Q. In Montgomery County?

A. It doesn't matter.

Q. Okay?

A. Just those three elements as far as I am concerned. That's all the State would have to prove.

(trial counsel) What about Anita Langford? You had raised your card?

MS. LANGFORD: After being robbed four times, I don't care if a person just went in their house and touched a piece of my furniture or if his fingerprints are even a slight—his finger-

print was on something, he was guilty because he is in my house without my permission.

. . . .

(trial counsel) All right. The defendant has no burden. Okay? The defendant has no burden, basically. All right. The defendant does have a right to remain silent and not say anything against him. You heard that before and you heard a lot of times under the Fifth Amendment, and he may not take the witness stand if he doesn't want to. How many of you would require or hold it against Mr. Knight if he decided he didn't want to take the witness stand, that he will let the witnesses do the talking or let the State present the evidence? How many of you would require him to take a witness stand? Uncomfortable with a person just sitting there? Anybody on the first row? How many of you would require him to take the witness stand? That's going be (sic) Mr. William Ruley. You would require Mr. Knight to take the witness stand?

MR. RULEY: Yes. I believe every man should come to his defense if he is innocent.

(trial counsel) Anybody on the second row?

MR. UTLEY: I would.

Q. You would require him if he chose to remain silent you would? Would you use that against him?

A. No. This thing particular. (sic)

(trial counsel) What about Mr. Ruley, would you use that against him if he didn't take the witness stand?

MR. RULEY: I would try not to directly involve that in my decision. It would be hard not to.

Q. That would somewhat affect your decision?

A. Yes.

(trial counsel) Anybody on the second row? 17?

MS. STRAWN: Uh-huh.

Q. You would require a witness (sic) to take the witness stand?

A. I would think that he would want to state his own defense.

MR. SLOAN: I agree.

MR. DEVOS: I agree.

(trial counsel) Number 16 and Number 19. You would require him to take the witness stand?

A. In his own defense I would think that would be the thing to do.

. . . .

(trial counsel) For the people who have been burglarized before, I want a show of hands. Had the people who have been burglarized before had those cases, especially I guess with—was that Anita Langford, I guess?

MS. LANGFORD: (INDICATES YES.)

Q. Let me ask you this specific question. Were you satisfied with the outcome of the case? Was the person ever caught?

A. Nobody's ever been caught.

Q. Would that affect your deliberation one way or the other?

A. Probably.

(trial counsel) Would that affect anyone who was a victim of theft or burglary? Would that affect your deliberations? That's Robert Stevenson?

MR. STEVENSON: I believe it would be hard for me to be non-biased, I really do.

The voir dire proceedings concluded shortly after the immediately preceding exchange with no objections or challenges to the venire made by trial counsel. Trial counsel then used his ten peremptory strikes to eliminate several of the venire members who had expressed opinions adverse to appellant's rights under the law.

■ Appellant is under the burden to meet the two-prong *Strickland* test by a preponderance of the evidence. *Parker v. State*, 693 S.W.2d 640, 643 (Tex.App.— Beaumont 1985, no pet.) overruled on other grounds in *Reed v. State*, 744 S.W.2d 112, 125 (Tex.Crim.App.1988). The record before us indicates that appellant has met his burden. In the instant case, the record reflects that, based upon their solicited or unsolicited responses, ten members of the venire were challengeable for cause because of some bias or prejudice against appellant or against basic statutory or constitutional rights guaranteed to appellant. *See*, TEX.CODE CRIM.PROC.ANN. art. 35.-16(a)(9) & (10); (c)(2) (Vernon 1989 & Vernon Supp.1992). Indeed, any juror shown to be biased against the law as a matter of law, must be excused *when challenged*, even if said juror states that he can set his bias aside and be fair and impartial. *Clark v. State*, 717 S.W.2d 910, 917 (Tex.Crim. App.1986), *cert. denied*, 481 U.S. 1059, 107 S.Ct. 2202, 95 L.Ed.2d 857 (1987). We find that, in failing to at least attempt to challenge the individuals who expressed prejudices against such basic rights as the presumption of innocence and the right to remain silent, trial counsel's representation was deficient in that it fell below an objective standard of reasonableness, considering all of the circumstances. In fact, we wonder if the case was not ripe for a mistrial at the conclusion of the State's portion of the voir dire.

■ We recognize that an accused is not necessarily prejudiced by the comments or questions of a prospective juror made during voir dire examination. *See*, 27 TEX. JUR.3d Criminal Law § 4325 (1983). However, prejudice does occur if it can be shown that the venire person's remarks were reasonably calculated to prejudice other members of the panel. *Sassin v. State*, 329 S.W.2d 881, 882 (Tex.Crim.App. 1959); *Alfano v. State*, 780 S.W.2d 494, 496 (Tex.App.—Corpus Christi 1989, no pet.). In the instant case, we are not presented with some off-the-cuff remarks made by one or two jurors regarding equivocal opinions of a prejudicial nature against appellant. What we are presented with is at least ten identifiable venire members with openly clear, and rather strong, biases and prejudices with regard to appellant's legal rights and privileges as an individual accused of a criminal offense. The remark from one unidentified venire member that death was an acceptable alternative to incarceration was particularly chilling.

■ Having found deficient representation by trial counsel, we now address the

reasonable probability that because of said deficient performance the result of the trial would have been different, or the "prejudice" prong of *Strickland.* We wish to note, at this point, that of the ten venire members we were able to identify by name or number who we have characterized as at least challengeable for cause, two actually served on the 12–member jury. These were jurors 19 and 25, Marinus Devos and Larry Hope, respectively.

The Supreme Court has recognized that there are circumstances that occur during trial that are so likely to prejudice an accused that the cost of litigating their effect is unjustified. *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657, 667 (1984). The Court has also reiterated the fact that voir dire is a critical stage of a criminal trial for constitutional purposes. *See, Gomez v. United States,* 490 U.S. 858, 873, 109 S.Ct. 2237, 2246, 104 L.Ed.2d 923, 937 (1989). Crucial to our analysis of *Strickland*'s second prong with regard to the circumstances in the instant case is the Supreme Court's consistent recognition of the constitutional right to an impartial jury. *See, Gray v. Mississippi,* 481 U.S. 648, 668, 107 S.Ct. 2045, 2056, 95 L.Ed.2d 622, 639 (1987). The level of respect with which the Court holds this right is characterized by their statement in *Gray* that, "because the impartiality of the adjudicator goes to the very integrity of the legal system, the *Chapman*[2] harmless-error analysis cannot apply. We

have recognized that 'some constitutional rights [are] so basic to a fair trial that their infraction can never be treated as harmless error.' (citations omitted). The right to an impartial adjudicator, be it judge or jury, is such a right. (citations omitted)." *Id.* In the instant case, trial counsel's deficient performance permitted the venire to be subjected to an atmosphere of such extreme prejudice with regard to appellant's rights and privileges that appellant was effectively stripped of legal representation. An examination of whether or not the result of the trial would have been different is mooted from the outset as appellant's right to a fair trial by an impartial adjudicator was stillborn. The above pronouncements make it clear, and we so hold, that in circumstances such as those present in the record before us, a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial. The second prong of *Strickland* is automatically satisfied. Appellant's first and second points of error are sustained. The judgment of the trial court, therefore, is reversed and the cause remanded to said court for a new trial.

REVERSED AND REMANDED.

2. 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705  (1967).