No. 04-98-00177-CR



Anthony Ray JOHNSON,


Appellant



v.




THE STATE OF TEXAS,


Appellee





From the 204th Judicial District Court of Dallas County, Texas


Trial Court No. F-97-76431-Q


Honorable Mark Nancarrow, Judge Presiding




Opinion by: Shirley W. Butts, Justice


Sitting: Catherine Stone, Justice

 Paul W. Green, Justice

 Shirley W. Butts, Justice(1)


Delivered and Filed: June 30, 1999



AFFIRMED



 A jury found Anthony Ray Johnson guilty of murder and enhanced punishment was assessed
at life imprisonment. We affirm.


 Appellant brings three points of error, first contending the trial court erred in not requiring
the State to elect the theory of murder to submit to the jury. Second, he appeals the adverse Batson(2)
ruling. Last, appellant alleges his counsel rendered ineffective assistance during jury voir dire.

 Briefly, the evidence reflects that appellant's former girlfriend gave a party on May 18, 1997.
At that time she was living with Louis Davis, Jr., who was shot. Appellant came to the party and
argued with Davis outside the house. Appellant went to his car, removed a loaded shotgun from the
trunk, and returned and shot Davis. In evidence was appellant's statement to the police, admitting
he shot Davis, but he thought Davis was reaching for a weapon. Appellant left after the shooting.
The evidence showed that no weapon was found on Davis or at the scene. No witness saw him with
a weapon. The court charged the jury on the defense of self-defense.

 At the jury charge conference following the guilt-innocence phase of trial, defense counsel
objected to the proposed charge, asking the court to require the State to elect either of the alternative
theories of guilt in the two charge paragraphs.

 The two theories were that appellant intentionally or knowingly caused the death or that he
intended to cause serious bodily injury and committed an act clearly dangerous to human life that
caused the death of the victim. See Tex. Penal Code Ann. § 19.02(b)(1) & (b)(2) (Vernon 1994).
 Although not offering formal legal and factual sufficiency points of error, appellant argues
the evidence did not support a verdict that he committed murder by intentionally and knowingly
causing the victim's death. We note, however, that appellant's action in leaving the scene,
deliberately getting a shotgun from his car's trunk, then returning to shoot Davis, was in evidence.
The fact finder weighed that evidence and also that he pointed the loaded shotgun at the victim's
chest and fired the shotgun at close range. Based on these facts, the jury could have found these acts
showed that appellant intentionally and knowingly caused the death of Davis.

 In Kitchens v. State, 823 S.W.2d 256 (Tex. Crim. App. 1991), cert. denied, 504 U.S. 958
(1992), the court reiterated that alternate pleading of the differing methods of committing one
offense may be charged in one indictment. Id. at 258. Although the indictment alleges the different
methods in the conjunctive, it is proper for the jury to be charged in the disjunctive. Id. In addition,
"it is appropriate where the alternate theories of committing the same offense are submitted to the
jury in the disjunctive for the jury to return a general verdict if the evidence is sufficient to support
a finding under any of the theories submitted." Id.

 In this case, the jury returned a general verdict of guilty as charged in the indictment. Texas
law requires a general verdict. Tex. Code Crim. Proc. Ann. art. 37.07 § 1(a) (Vernon 1981). See
Fuller v. State, 827 S.W.2d 919, 931 (Tex. Crim. App. 1992) ("It is well settled that when a general
verdict is returned, and the evidence is sufficient to support a finding of guilt under any of the
paragraph allegations submitted, the verdict will be upheld."); Rooney v. State, 815 S.W.2d 903, 905-06 (Tex. App.--Fort Worth 1991, no pet.); Riley v. State, 658 S.W.2d 818, 819 (Tex. App.--Fort
Worth 1983, no pet.).

 Appellant does not argue that the evidence is insufficient to support the verdict that he
committed an act clearly dangerous to human life that resulted in the death of the victim. Under this
theory alone, the general verdict can be upheld.


 The State was not required to elect one of the two theories of the method of commission of
the offense of murder. The trial court properly denied the request. Point one is overruled.

The Batson Contest


 After voir dire concluded, defense counsel made a Batson(3) motion that there were five
African Americans within the strike range, and the State struck two, venirepersons 19 and 26. The
defense had struck a sixth African American within that range, a probation officer. Three other
African Americans were accepted as petit jurors.

 The prosecutor gave as reasons for the two strikes:

 ...In reply to number 19, the notes that the State has would refer that number 19, Ms.
Coleman, was unresponsive to the State. She would not look me in the eye and the
State had the feeling she did not like the State.


 Number 26 had -- was very friendly with the Defense lawyer, in fact, during voir
dire he laughed in response to what the Defense lawyer had to say. Never had
response to me. State felt he had animosity towards the State. Did not have much
to say to me at all and had feelings unfriendliness [not] displayed by the three
members who made it to the panel and the one additional member the defense struck
himself.


 The prosecutor gave these specific reasons:


 She (number 19) didn't cooperate. She didn't talk to me about the issues. She
wouldn't make eye contact ... didn't smile [as many others did] ... the nonverbal
response, coming back and forth from other members who were minorities that made
it onto the panel [and those who did not].


 The prosecutor stated that she had written a comment that Ms. Coleman "doesn't like me."
Also she had struck another venireperson, number 25, whose "posture I didn't deem as friendly."
Number 25 was struck because she was "chatty" with the defense counsel, responding to him, but
her body posture showed little friendliness to the prosecutor. She repeated that she struck the subject
number 26, Wendell Brown, for his body language and the distinction between his behavior toward
defense counsel on answering questions versus that toward the State. "Body language, how they
responded and kept eye contact, how they seemed to appear to me when I glanced in their direction
and tried to communicate with them."

 The trial court found the State's explanation showed that the peremptory strikes of numbers
19 and 26 were exercised for race-neutral reasons. Appellant maintains the court erred by finding
that the State offered race-neutral reasons for the two peremptory strikes.

 In our review, we must accept that finding unless we determine that it is clearly erroneous.
See Vargas v. State, 838 S.W.2d 552, 554 (Tex. Crim. App. 1992); Allen v. State, 811 S.W.2d 673,
675 (Tex. App.--Dallas 1991, pet. ref'd).

 Appellant established that he was a member of a cognizable racial group. See Batson, 476
U.S. at 96. The burden then shifted to the State to present a racially-neutral explanation for the
challenges, and it must be related to the case. Id. at 97. Williams v. State, 804 S.W.2d 95, 96-97
(Tex. Crim. App.), cert. denied, 501 U.S. 1239 (1991); see also Purkett v. Elem, 514 U.S. 765, 767
(1995). The reason need not rise to the level of a challenge for cause, but it must be race-neutral.
See Hawkins v. State, 793 S.W.2d 291, 293 (Tex. App.--Dallas 1990, pet. ref'd).

 The burden of production as well as persuasion remains with the defendant who is asserting
that the prosecutor engaged in a discriminatory selection process to arrive at a petit jury, and
therefore must prove existence of the purposeful discrimination. Williams, 804 S.W.2d at 97. Once
the prosecutor articulates racially neutral explanations, the burden shifts back to the defendant to
persuade the court that the neutral explanations are really a pretext for discrimination. See
Satterwhite v. State, 858 S.W.2d 412, 423 (Tex. Crim. App.), cert. denied, 510 U.S. 970 (1993). The
burden remains with the defendant to establish purposeful discrimination. Tex. Code Crim. Proc.
Ann. art. 35.261(a) (Vernon 1989); see also Lewis v. State, 815 S.W.2d 560, 564 (Tex. Crim. App.
1991), cert. denied, 503 U.S. 920 (1992).

 In Gaines v. State, 811 S.W.2d 245, 250 (Tex. App.--Dallas 1991, pet. ref'd), this court
stressed that prosecutors may rely on nonverbal as well as verbal aspects of a venireperson's answers
in assessing whether a venireperson is hostile to the prosecutor in a particular case. Our review does
not encompass whether the explanation of the prosecutor is credible. We must rely upon the trial
court's observation of the venireperson's answers and demeanor relative to such explanation. Id.

 Without supporting evidence in the record, appellant is asking this court to speculate that the
real reason for the strikes was that the prosecutor did not want five African American jurors. We
review the evidence in the light most favorable to the trial court's ruling. Cantu v. State, 842 S.W.2d
667, 689 (Tex. Crim. App. 1992). Appellant must prove affirmatively that the State's race-neutral
explanations were a sham or pretext. Webb v. State, 840 S.W.2d 543, 544 (Tex. App.--Dallas 1992,
no pet.). This burden is not met by appellant's mere disagreement with the explanations. Id.

 Moreover, the affirmative showing of pretext must be made in the trial court. On appeal
appellant must show that the trial court, having heard the affirmative showing of pretext, overruled
the Batson challenge, thereby abusing its discretion. Instead, at the trial level, appellant disagreed
with the prosecutor's explanations, but did not offer evidence to show purposeful discrimination or
pretext. We conclude that the decision of the trial court was not clearly erroneous. Point two is
overruled.

Effective Assistance of Counsel


 Appellant contends that his counsel rendered ineffective assistance of counsel during voir
dire for failure to challenge for cause or to peremptorily strike venireperson 36, Donald Fendrick,
who became foreman of the jury.

 Voir dire is a critical stage of criminal proceedings for constitutional purposes. See Gomez
v. United States, 490 U.S. 858, 873, 109 S.Ct. 2237, 2246, 104 L.Ed.2d 923 (1989). Selection of the
jury is a necessary part of trial by jury. The Sixth Amendment of the United States Constitution and
article 1, section 10 of the Texas Constitution apply to guarantee the assistance of counsel during this
critical stage of criminal proceedings. 

 In reviewing the effectiveness of counsel during the voir dire stage of trial, the court in
Knight v. State, 839 S.W.2d 505 (Tex. App.--Beaumont 1992, no pet.) applied the standard declared
in Strickland v. Washington, 466 U.S. 668 (1984) and adopted by Texas in Hernandez v. State, 726
S.W.2d 53, 56-57 (Tex. Crim. App. 1986). Knight, 839 S.W.2d at 506.

 In our review, Strickland requires that we first determine whether counsel's representation
fell below an objective standard of reasonableness under prevailing professional norms. If it did not,
that ends our inquiry. But if the performance is determined to be deficient, then this court must
decide whether there is a reasonable probability that but for trial counsel's deficient performance,
the result of the trial would have been different. Strickland, 466 U.S. at 687. We will presume that
counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable
professional judgment. Id. at 689.

 At the beginning of voir dire, the court inquired whether there were some who felt they might
have a problem being fair. Fendrick said, "I think I would have a problem being fair in this case,
given family history. I had family members murdered in the past." Three other venirepersons
expressed doubt about their fairness because they also had family members who had been murdered.

 The trial court advised the venirepersons, "[J]ust because you've been a victim of crime does
not disqualify you from sitting as a juror." They were told that to be disqualified one would be
unable to judge the parties on the courtroom evidence. The court explained that meant that
something of so great a magnitude had happened to them that it would be impossible for them to set
it aside and judge this case on its merits.

 The prosecutor discussed generally other matters with the group. Then she asked whether
they could consider five years minimum punishment in some cases. Fendrick answered, "No way,"
if the definition of "intentional" murder was proved.

 A potential juror may be challenged for cause by the defense for the reason that he has a bias
or prejudice against any of the law applicable to the case upon which the defense is entitled to rely
as to the punishment therefor. See Tex. Code Crim. Proc. Ann. art. 35.16(c)(2) (Vernon Supp.
1999). However, on appeal appellant cites the provision prohibiting a juror's bias or prejudice in
favor of or against the defendant. See Tex. Code Crim. Proc. Ann. art. 35.16 (a)(9) (Vernon 1989).
Here the only matter raised is Fendrick's initial refusal to consider the minimum sentence (the law).
 Again, on questions by the prosecutor regarding the prospective jurors' feelings about the
justice system, Fendrick said his brother was convicted of three counts of armed robbery in
Nebraska. He said, however, the justice system was good, but he had problems with the jail system.
When asked if he had any particular feelings for one side or the other that might make it hard for him
to be a juror, he answered, "Not necessarily." When the defense counsel asked Fendrick later
whether he had any questions, he said,

 Yeah, I wanted to clarify something. When you asked me about the minimum
sentence for murder, I indicated that I thought five years was too little. Since that
time I've thought it over. There's probably occasions where five years is fine.

 * * *


 Appellant's first statement concerning inability to consider the minimum sentence of five
years if there was an intentional murder was clarified and showed that in some cases that sentence
would be "fine." A defendant has a right to challenge for cause any juror who could not give the
minimum punishment. Von Byrd v. State, 569 S.W.2d 883, 891 (Tex. Crim. App. 1978), cert.
denied, 441 U.S. 967 (1979). In Russell v. State, 727 S.W.2d 92, 93-94 (Tex. App.--Dallas 1987,
pet. ref'd), the prospective juror was rehabilitated after he expressed doubts as to his ability to give
probation. He admitted that "in a proper case, under all of the testimony and facts, I guess I probably
would." Id. at 93. The court held the trial court did not err in overruling the defendant's challenge
for cause. Id. at 93-94.

 In the present case the record does not support appellant's contention that venireperson
Fendrick was subject to challenge for cause. Therefore, defense counsel's failure to challenge for
cause does not demonstrate deficient performance under the first prong of Strickland. Further
reason that counsel may not have desired to exercise a peremptory challenge under the facts shown
may have included the admission by the juror that his brother had been convicted of armed robbery.
This may properly be termed trial strategy. Because appellant has not met his Strickland burden to
prove ineffective assistance of counsel, we overrule point three.

 The judgment is affirmed.


 SHIRLEY W. BUTTS

 JUSTICE

DO NOT PUBLISH
































1. Assigned to this case by the Chief Justice of the Supreme Court.
2. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
3. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).