**Marjoe Lee TATE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–94–00450–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 6, 1997.

Frances M. Northcutt, Houston, for appellant.

S. Elaine, Roch, Houston, for appellee.

Before MURPHY, C.J., and ANDERSON, and O'NEILL, JJ.

## OPINION

O'NEILL, Justice.

Appellant, Marjoe Lee Tate, was found guilty at a trial before a jury of aggravated robbery. TEX.PENAL CODE ANN. § 29.03 (Vernon 1994).[1] The court assessed punishment at twenty years confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant appeals his conviction in nine points of error asserting: (1) the trial court erred in denying appellant's *Batson* challenges; (2) the trial court erred in restricting appellant's questioning during voir dire; (3) the trial court erred in denying his motion to suppress; (4) the evidence was

---

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised penal code. *See* Acts 1993, 73rd Leg., Ch. 900, § 1.18(b). Therefore, all references to the penal code are to the code in effect at the time the crime was committed.

legally and factually insufficient to support his conviction; and (5) the trial court erred in making an affirmative finding of a deadly weapon. We strike the deadly weapon finding, and affirm the judgment of the trial court as modified.

## Background

At about 8:35 p.m. on the evening of February 3, 1993, Rod Jason Brinkley, the complainant, was driving his truck on Old Richmond Road in Fort Bend County. Brinkley was driving about ten miles over the speed limit when he looked into his rearview mirror and saw the headlights of a Ford Taurus coming up quickly behind him. He thought it was a police officer because many Fort Bend County sheriffs drive Ford Tauruses. The car's headlights were distinctive in that the passenger's headlight was either dimmer than the other one or was off at an angle. Believing he was about to be pulled over for speeding, Brinkley slowed down and came to a full stop at the stop sign at the intersection of Old Richmond and Bellknap. The Taurus sped up, passed him at the stop sign, and stopped directly in front of his truck. Brinkley noticed that the car was not a police car but a dark colored Ford Taurus. The passenger of the Taurus stepped out of the car with a shotgun, approached Brinkley, and told him to "Get out of my truck." Before Brinkley could react, the man fired and hit him in the arm. Brinkley put the car into reverse and drove backwards as fast as he could go, hitting another car. The man fired another shot as Brinkley was backing up, then got into the Taurus and left the scene. Brinkley attempted to pull into the driveway of a nearby house, but drove into a ditch. Brinkley got out of his truck and ran to the house. The owners of the house contacted the police and an ambulance.

Deputy Boatman, with the Harris County Sheriff's Department, arrived at the house at approximately 8:56 p.m. and found Brinkley lying on the kitchen floor. Brinkley described his assailants as two young black males, and described the vehicle they were driving as a dark colored Ford Taurus. He stated that the gunman had a mustache and was wearing a large, dark jacket, similar to a Dallas Cowboys starter jacket. Deputy Boatman broadcast the description of the men and the car to the dispatcher on the radio.

Deputy Baker heard the broadcast and proceeded toward the intersection where the incident occurred. As he approached Bissonnet, Baker observed two young black males in dark clothing near the pay phones at a convenience store less than a mile from the crime scene. Parked near the two men was a charcoal grey Ford Taurus. Baker observed one of the men, later identified as appellant, get into the Taurus and drive away. Baker followed, and observed appellant commit a traffic infraction by failing to signal before making a right turn. Baker stopped the appellant and had him step out of the car. Shining his flashlight in the back of the vehicle, Baker saw in plain view a short-barreled firearm lying on the back seat. Appellant was arrested, and the car was towed to the crime scene. Detective Leitner, with the Harris County Sheriff's Department, noticed that one of the headlights on the Taurus appeared to be off center, which made it appear dimmer than the other headlight. Leitner also observed that the weapon found in the back of the Taurus had recently been fired. The next day, an officer sent to the scene discovered a spent shotgun shell. An expert witness testified that the shell had been shot from the same gun that was retrieved from the Taurus.

## Point of Error One

In his first point of error, appellant alleges the trial court erred in denying his objection to the State's exercise of seven peremptory challenges based on race and national origin in violation of the Equal Protection Clause of the United States Constitution.

The Fourteenth Amendment to the United States Constitution prohibits the State from using its peremptory strikes in a racially discriminatory manner. *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Texas Legislature has codified this prohibition at Tex.Code Crim.Proc.Ann. art. 35.261 (Vernon 1989). Initially, the defen-

dant has the burden to establish a prima facie case of purposeful discrimination. *Harris v. State*, 827 S.W.2d 949, 955 (Tex.Crim. App.1992), *cert. denied*, 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). If the defendant makes a prima facie showing, the burden shifts to the State to rebut the presumption of discrimination by providing race-neutral explanations for challenging the jurors in question. *Id.* If the State comes forward with race-neutral reasons, the burden shifts back to the defendant to impeach or refute the neutral explanations or show that they are merely pretext for discrimination. *Salazar v. State*, 795 S.W.2d 187, 192 (Tex.Crim.App.1990). If the trial court concludes that the State used its strikes in a discriminatory manner, it must dismiss the entire jury panel and summon a new one. TEX.CODE CRIM.PROC.ANN. art. 35.261.

■■■ When an appellate court reviews a trial court's finding of no discrimination, it must review the entire record, including voir dire and the *Batson* hearing. *Whitsey v. State*, 796 S.W.2d 707, 723 (Tex.Crim.App. 1989) (opinion on reh'g). When reviewing the trial court's decision, we are not to consider whether the race-neutral explanation is persuasive or even plausible. *Purkett v. Elem*, 514 U.S. 765, ——, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834 (1995); *Rodriguez v. State*, 919 S.W.2d 136, 140 (Tex.App.—San Antonio 1995, no pet.). Rather, we must determine whether a discriminatory intent is inherent in the prosecutor's explanation. *Hernandez*, 500 U.S. at 360, 111 S.Ct. at 1874. As long as the proponent of the strike offers an explanation that is not inherently discriminatory, the burden shifts to the challenging party to persuade the court that the reason offered is merely a pretext for purposeful discrimination. *Purkett*, 514 U.S. at ——, 115 S.Ct. at 1771. In determining whether the challenger has met this burden, the trial court must assess the credibility of the proponent of the strike and the persuasiveness of the justification for the strike. *Id.* at —— ——, 115 S.Ct. at 1771–72. Findings by the trial court must be clearly erroneous for this court to overturn them on appeal. *Whitsey*, 796 S.W.2d at 723. This court may only reverse if a review of the voir dire record, the State's explanations, the

composition of the jury panel, and the appellant's rebuttal and impeachment evidence leaves us with the definite and firm conviction that a mistake has been made. *Vargas v. State*, 838 S.W.2d 552, 554 (Tex.Crim.App. 1992).

### Veniremember 1

■■■ The State explained that it struck veniremember 1 because, "when we had talked—when I was talking to juror No. 3 about using and exhibiting a deadly weapon, juror No. 1 was obviously very confused about the issue and she got into that." Appellant claims there is nothing in the record to support the State's reasoning. We disagree. When the State was discussing the deadly weapon charge, veniremember 1 voiced a concern about the aggravated element of the offense where the accused was "chased away or don't [sic] take anything or hurt anybody." Therefore there was evidence to support the State's belief that this potential juror appeared confused. Moreover, a prosecutor may rely upon nonverbal responses of a veniremember in assessing whether a potential juror may be harmful to the State's case. *Gaines v. State*, 811 S.W.2d 245, 250 (Tex.App.—Dallas 1991, pet. ref'd). Where the State's explanation for its peremptory challenge is tied to the credibility of the prosecutor, a reviewing court "must rely on the trial court's observation of the venire[member's] answers and demeanor relative to such explanations." *Id.* (citing *Tennard v. State*, 802 S.W.2d 678, 682 (Tex.Crim. App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991)). The trial court was in the best position to observe the demeanor of this veniremember and determine whether the State's explanation that she appeared confused was plausible. We cannot say that the trial court's failure to find discrimination was clearly erroneous.

### Veniremember 6

■■■ The State explained that it struck veniremember 6 because he nodded his head in agreement that the defendant should receive more than the benefit of the doubt. Appellant responded that the prosecutor

failed to ask him any questions as to why he was nodding his head. Appellant argues that the failure to question a challenged juror is a factor which weighs heavily against the legitimacy of a race-neutral explanation, and tends to show that the State's reason is not supported by the record or is impermissible pretext. *Whitsey v. State,* 796 S.W.2d at 713–14.

While it is true that a lack of questioning might expose the weakness of the State's explanation, the State is not required to ask a specified rubric of questions. *Chambers v. State,* 866 S.W.2d 9, 24 (Tex. Crim.App.1993), *cert. denied,* 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). As a reviewing court, we are not to consider whether the race-neutral explanation is persuasive or even plausible. *Rodriguez,* 919 S.W.2d at 140. Rather, we must determine whether a discriminatory intent is inherent in the prosecutor's explanation. *Hernandez,* 500 U.S. at 360, 111 S.Ct. at 1874. We find no discriminatory intent in the prosecutor's stated justification for the strike. Again, the trial court was in the best position to observe the prospective juror's demeanor in responding to the State's questioning and to determine the credibility of the prosecutor's explanation. *Gaines,* 811 S.W.2d at 250. Appellant's bare contention that the State did not question the potential juror, without more, does not convince this court that the trial court's decision was "clearly erroneous." *See Hill v. State,* 827 S.W.2d 860 (Tex.Crim.App.), *cert. denied,* 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992); *see also Chambers,* 866 S.W.2d at 24–25.

### Veniremember 20

The State explained that it struck veniremember 20, a Hispanic woman, because she did not appear to be paying attention during voir dire. A prospective juror's inattentiveness may be a sufficiently race-neutral reason to justify the use of a peremptory challenge. *Gambel v. State,* 835 S.W.2d 788, 790 (Tex.App.–Houston [14th Dist.] 1992); *Barnes v. State,* 855 S.W.2d 173, 174 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd); *Woods v. State,* 801 S.W.2d 932, 937 (Tex.App.—Austin 1990, pet. ref'd). Appellant claims, however, that the prosecutor's general explanation of inattentiveness is not objectively verifiable by the record and is therefore not a plausible racially neutral reason for the strike. In addition, appellant claims there was disparate treatment because "apparently white" veniremembers 15, 16 and 22 were also inattentive but were not struck, indicating the State's claim of inattentiveness was pretextual.

The record supports the prosecutor's statement that, as he was asking questions row by row, he had to stop and specifically point to this veniremember for her response. Thus, the prosecutor's explanation that this particular veniremember was inattentive is objectively verified by the record. Citing *Woods,* appellant claims the prosecutor's explanation is pretextual because other jurors were inattentive but were not struck. 801 S.W.2d at 937. However, in *Woods* the prosecutor struck all eight eligible African–American members of the venire, prompting the court to note that "desultory voir dire and the State's use of peremptory challenges to strike all or most black veniremen are illustrative types of evidence that can be used to raise the inference of discrimination." *Id.* There is no evidence in the instant case, and appellant does not argue, that the State struck all or nearly all of the Hispanic veniremembers. Although appellant claims other "apparently white" veniremembers were not paying attention, there is nothing in the record to support such a claim. Under these circumstances, we believe the trial court was in the best position to assess the relative attentiveness of the veniremembers and determine the credibility of the prosecutor's explanation. *Gaines,* 811 S.W.2d at 250. Based upon this record, we cannot say that the trial court's decision was "clearly erroneous." *See Hill v. State,* 827 S.W.2d at 860.

### Veniremember 27

The State explained that it struck veniremember 27 because she could not convict on the testimony of one witness. Appellant claims there is no evidence to support this explanation. However, the record reflects that appellant did not preserve a *Batson* challenge as to this prospective juror.

Although appellant indicated "for the record" that number 27 is a Hispanic woman, the actual *Batson* challenge was limited to prospective jurors 1, 6, 20, 28 and 33:

> [APPELLANT'S COUNSEL]: If I can read for the record, No. 1 is a black woman, No. 6 is a black man, No. 18—No. 20 is a Hispanic woman. Take out No. 18. No. 27 is a Hispanic woman and 28 is a black man, and 33, I believe, is a black woman. It's a black person, and No. 36—well, I'm sorry. 36 was agreed to. I beg your pardon. And 43 is a black man.
>
> I want to show for the record, if I may, Mr. Jennings in this case—I believe I count 1, 6, 20, 28, 33, 42 and 43 and 33. We didn't get that far.
>
> [PROSECUTOR]: Are you alleging I struck them because I'm a racist?
>
> [APPELLANT'S COUNSEL]: *I'll say you struck 1, 6, 20, 28 and 33 and all of these people belong to an identifiable minority.* That's better than one-half of his strikes went to strike identifiable minorities.

(emphasis added). When asked which strikes were challenged as racially motivated, appellant identified jurors 1, 6, 20, 28 and 33. Once the prosecutor explained the reasons for these strikes, appellant's counsel only responded as to these prospective jurors. The prosecutor's explanation regarding number 27 was never challenged as being unsupported by the record. Under these circumstances, we believe appellant waived error as to veniremember 27.

 Even if appellant had properly preserved error, we do not find that the trial court clearly abused its discretion. The record does not indicate that number 27 was questioned regarding the one witness rule, but it does reflect her affirmation that if she had a reasonable doubt about the defendant's guilt and the other eleven jurors disagreed with her she would hold strong to her conviction and would not change her mind. Although the prosecutor may have been mistaken about the basis of his challenge, it was nevertheless race neutral, and we find no indicia that the challenge was racially motivated. The burden therefore shifted back to appellant to prove purposeful racial discrimi-

nation. *Purkett*, 514 U.S. at ——, 115 S.Ct. at 1770. Appellant made no response. It was appellant's responsibility to persuade the court of an impermissible motive on the part of the prosecutor. *See Lewis v. State*, 815 S.W.2d 560, 564 (Tex.App.—Houston [14th Dist.] 1991, no pet.), *cert. denied*, 503 U.S. 920, 112 S.Ct. 1296, 117 L.Ed.2d 519 (1992) (citing *Williams v. State*, 804 S.W.2d 95, 97 (Tex.Crim.App.), *cert. denied*, 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991)). Based upon this record, there is no legal basis to disturb the trial court's decision.

### *Veniremember 28*

 The prosecutor originally moved to strike number 28 for cause because he did not appear to be able to follow the law and convict on the testimony of one witness. At the conclusion of voir dire, the juror was called to the bench and individually questioned. Although he stated he would not have trouble finding the defendant guilty based upon the testimony of one witness, he also stated that he felt in his heart he would have anger against that one witness "because it would be his word against his word." The prosecutor then asked: "Even if the witness presented evidence that was believable beyond a reasonable doubt, you still couldn't find someone guilty because it's just one witness?" The prospective juror responded, "Yes." Appellant's counsel then asked if he could follow the court's instructions, to which the juror responded "yes."

 Appellant argues that since the prospective juror said he would follow the law the State's peremptory challenge must have been racially motivated. We disagree. Whether or not the testimony of the prospective juror was sufficient to justify a challenge for cause, the juror evidenced a problem with, or confusion regarding, the one witness rule. Appellant appears to argue that any justification for a strike that does not impact the prospective juror's ability to be fair must be a pretext for discrimination. However, the prosecutor's justification for exercising a peremptory challenge does not have to rise to the level of a causal challenge to disprove that it was racially motivated. *See Jones v. State*, 845 S.W.2d 419, 421 (Tex.App.—Hous-

ton [1st Dist.] 1992, pet. ref'd). Peremptory strikes may be exercised for any reason whatsoever, so long as the reason is not inherently discriminatory. *Purkett,* 514 U.S. at ——, 115 S.Ct. at 1771. The prosecutor's explanation provided an adequate independent, non-racial justification for the peremptory challenge. *See Tennard,* 802 S.W.2d at 682; *Tompkins,* 774 S.W.2d at 204–205. We do not believe the trial court clearly abused its discretion in rejecting appellant's *Batson* challenge as to this veniremember.

### *Veniremember 33*

■ The prosecutor explained that veniremember 33 was struck because at the beginning of voir dire she "laughed out loud when I asked something about a prosecutor ... I felt she would be prejudiced against prosecutors." The prosecutor offered as Exhibit A his drawing of the panel that contained his notes made during voir dire. The notes support his explanation that number 33 laughed during voir dire. Appellant replied: "I have no response to whoever it is, 33, supposedly laughed out loud."

Appellant claims the record does not indicate veniremember 33 laughed out loud. However, it is unlikely that a statement of facts would memorialize such an occurrence any more than it would a smirk or a shrug. As already stated, the trial court is in the best position to observe the prospective juror's demeanor relative to the prosecutor's explanation. *Gaines,* 811 S.W.2d at 250. We can perceive no discriminatory intent in the prosecutor's justification for the strike. Appellant failed to meet his burden to prove purposeful discrimination.

Point of error number one is overruled.

### Points of Error Two, Three and Four

■ In his next three points of error, appellant contends the trial court erred in restricting voir dire. When an appellant challenges a trial judge's limitation on the voir dire process, the reviewing court must analyze the claim under an abuse of discretion standard, the focus of which is whether the appellant proffered a proper question concerning a proper area of inquiry. *Caldwell v. State,* 818 S.W.2d 790, 793 (Tex.Crim.

App.1991), *cert. denied,* 503 U.S. 990, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992); *Cockrum v. State,* 758 S.W.2d 577, 584 (Tex.Crim.App. 1988), *cert. denied,* 489 U.S. 1072, 109 S.Ct. 1358, 103 L.Ed.2d 825 (1989). A proper question is one that seeks to discover a veniremember's views on an issue applicable to the case. *McCarter v. State,* 837 S.W.2d 117, 121 (Tex.Crim.App.1992); *Caldwell,* 818 S.W.2d at 794; *Guerra v. State,* 771 S.W.2d 453, 468 (Tex.Crim.App.1988), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3260, 106 L.Ed.2d 606 (1989). If a proper question is disallowed, harm to the appellant is presumed because he has been denied the ability to intelligently exercise his peremptory strikes. *Caldwell,* 818 S.W.2d at 794. However, a trial court is given broad discretionary authority to impose reasonable restrictions on the voir dire process. *Id.* at 793. In particular, a trial court may restrict confusing or misleading voir dire questions. *See Jones v. State,* 850 S.W.2d 223 (Tex.App.—Fort Worth 1993, pet. ref'd).

■ In point of error two, appellant claims the trial court erred in prohibiting him from asking certain veniremembers who had been victims of crime whether this would affect their service on the jury. Defense counsel questioned twelve veniremembers on this issue before the State objected as follows:

[PROSECUTOR]: Your Honor, at this time, I'm going to object because I believe, again, there is a kind of inadvertent mistake being made. In order for a juror not to be qualified to serve, the question would have to go to their bias or prejudice in favor of or against this particular Defendant.

Obviously, nobody here in this courtroom has identified this particular Defendant as being the person who broke into their car or home or whatever, and I would ask the Court to instruct the jury to be instructed in that respect, if they have any bias or prejudice against this particular Defendant because of, you know, that other crime that occurred or whatever.

THE COURT: Sustained. Couch your question in that manner.

The trial court clearly limited its preclusive ruling to the form of appellant's questions, not to their substance. The trial court did not order counsel to discontinue questioning in the particular area of inquiry, but merely to rephrase the questions. Where there is no absolute limitation placed on the underlying substance of the defense's voir dire question, it is incumbent upon counsel to rephrase the improperly phrased query or waive the voir dire restriction. *Trevino v. State,* 815 S.W.2d at 601; *Guerra,* 771 S.W.2d at 468. Counsel in fact rephrased the inquiry and continued the line of questioning. Thus, the trial court did not abuse its discretion by improperly restricting voir dire. Point of error two is overruled.

■ In point of error three, appellant contends the trial court erred in prohibiting defense counsel from questioning a veniremember, who had previously served as a juror in a robbery case, about whether the defendant in that case had testified. While questioning the venire regarding their prior jury service, the following transpired:

[DEFENSE]: 25. Yes, ma'am. What kind of a case was it?

[PROSPECTIVE JUROR]: Criminal, several years ago.

[DEFENSE]: Did you reach a verdict?

[PROSPECTIVE JUROR]: Yes, we did.

[DEFENSE]: You don't remember what kind of case it was?

[PROSPECTIVE JUROR]: Robbery.

[DEFENSE]: It was a robbery case?

[PROSPECTIVE JUROR]: Yes.

[DEFENSE]: Did the Defendant testify?

[PROSPECTIVE JUROR]: Yes.

[PROSECUTOR]: Your Honor, excuse me. I'm going to object to that as being an improper question.

THE COURT: Sustained.

Appellant contends the question was designed "to explore in a subtle manner whether Appellant's failure to testify would be held against him." However, the question did not refer to an issue in this case. Counsel was free to question the panel about their feelings regarding the right of appellant not to testify, and was only precluded from asking

whether defendants in other cases had testified. Counsel made no attempt to ask a properly phrased question of this prospective juror. *See Trevino,* 815 S.W.2d at 601. In any event, the prospective juror answered the question before the State was able to lodge its objection. Finding no abuse of discretion, point of error three is overruled.

■ In his fourth point of error, appellant contends the trial court erred in prohibiting him from asking a prospective juror: "Do you think the State of Texas has ever prosecuted or convicted someone who was not guilty?" Appellant claims the question was designed "to uncover hidden bias and prejudice that would not be forthcoming with a more directly worded question." However, as the State points out, the veniremember answered an identical inquiry when he responded "yes" to the questions: "Do you think there are some people in prison that are actually not guilty?" and "Do you think it's possible for someone to be wrongly accused?" The record also reveals that appellant asked the veniremember other questions concerning the presumption of innocence. *See Davis v. State,* 830 S.W.2d 206, 207–08 (Tex.App.—Houston [14th Dist.] 1992), *rev'd on other grounds,* 872 S.W.2d 743 (Tex.Crim. App.1994) (question was relevant and material but record showed appellant had already questioned jury panel with regard to the same issue). Consequently, we do not find that appellant was prohibited from exercising his peremptory challenges in an intelligent manner. Point of error four is overruled.

### Points of Error Five and Six

In points of error five and six, appellant contends the trial court erred in denying his motion to suppress evidence because the initial stop of appellant violated the Fourth Amendment of the United States Constitution and Article I § 9 of the Texas Constitution. Specifically, appellant contends (1) Deputy Baker did not have a reasonable, articulable suspicion that appellant was involved in criminal activity and therefore his investigative detention was unconstitutional, (2) Deputy Baker did not have probable cause to arrest him, and (3) Deputy Baker's objective conduct exceeded the constitutional

limits and therefore his pretextual stop was unconstitutional.

In reviewing a motion to suppress, we do not engage in our own factual review but determine whether the record supports the trial court's fact findings. *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990). We view the evidence in the light most favorable to the trial court's ruling. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Davis v. State,* 829 S.W.2d 218, 220 (Tex.Crim.App.1992); *State v. Hamlin,* 871 S.W.2d 790, 792 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). We reverse a trial court's suppression ruling only if the court clearly abused its discretion. *Alvarado v. State,* 853 S.W.2d 17, 23 (Tex.Crim.App. 1993); *Cantu v. State,* 817 S.W.2d 74, 77 (Tex.Crim.App.1991). Absent a clear abuse of discretion, the trial court's ruling on admissibility of evidence should not be disturbed. *Arroyo v. State,* 881 S.W.2d 784, 786 (Tex.App.—Houston [14th Dist.] 1994, no pet.) (citing *Romero v. State,* 800 S.W.2d at 543).

A temporary detention for purposes of investigation is justified if an officer, based upon specific and articulable facts, reasonably suspects that the person may be associated with a crime. *Davis v. State,* 829 S.W.2d at 219 (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). To effect a full custodial arrest, an officer must have probable cause to believe the person arrested has committed or is committing an offense. *Amores v. State,* 816 S.W.2d 407, 411 (Tex.Crim.App.1991). Therefore, the threshold question is whether the detention of appellant constituted an investigative detention or an arrest, because the nature of the detention determines the constitutional parameters that apply to determine its legality. *Id.* The characterization of a stop as an arrest or detention based on restraint of movement depends upon whether, given the totality of the circumstances, a reasonable person would believe the seizure was to be brief. *Francis v. State,* 922 S.W.2d 176, 179

(Tex.Crim.App.1996). In making this determination, we consider the perceived length of the seizure viewed from the reasonable belief of the detainee, the type and manner of investigation by the police, and other factors. *Id.* at 178–80.

Applying this standard to the instant case, we find that Deputy Baker's initial interaction with the appellant was an investigative detention and not an arrest. Based upon the dispatch that two black males occupying a dark-colored Ford Taurus were possible suspects in a shooting that had just occurred less than a mile away, the officer had sufficient reasonable, articulable suspicion to make the detention. Deputy Baker was also justified in detaining appellant based upon the traffic violation. Believing the suspect to be armed, Baker remained by his police car, drew his gun, ordered appellant out of the car, and told him to keep his hands in plain view. The fact that the officer's weapon was drawn is not necessarily indicative of an arrest. *See Marsh v. State,* 684 S.W.2d, 676, 679 (Tex.Crim.App.1984); *Ebarb v. State,* 598 S.W.2d 842 (Tex.Crim. App.1979). Based upon the information he possessed, Baker was justified in securing his own safety before continuing the investigation. *See Hilla v. State,* 832 S.W.2d 773, 779 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). Baker instructed appellant to put his hands on the trunk of the vehicle, and patted him down to make sure he had no guns. Baker then walked along the driver's side of the car to see if there was anyone else in the vehicle and saw, in plain view, a short-barreled firearm in the rear seat. At this point the seizure of appellant evolved from an investigative detention to an arrest based upon probable cause. Considering the type and manner of investigation by Deputy Baker and the abbreviated length of the seizure when viewed from the reasonable belief of the detainee,[2] we do not believe the initial seizure of appellant rose to the level of an arrest.

Appellant argues that Deputy Baker's traffic stop was merely pretextual. Appellant

---

**2.** The reasonable person standard assumes a reasonable person innocent of criminal activity. *Francis v. State,* 922 S.W.2d at 176, 179 (Tex. Crim.App.1996) (citing *Florida v. Bostick,* 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991)).

concedes that such stops are constitutionally valid as long as the officer's objective conduct does not exceed the constitution and applicable statutory limits, *Crittenden v. State*, 899 S.W.2d 668, 673 (Tex.Crim.App.1995); *Gordon v. State*, 801 S.W.2d 899 (Tex.Crim.App. 1990), but claims the officer's conduct in drawing his gun, ordering appellant out of the car and frisking him was not objectively reasonable. We disagree. Considering the information Baker had received that appellant, who fit the description provided by the victim, had been involved in an aggravated robbery and might be armed, we find the officer's actions to be objectively reasonable and necessary to secure his own safety.

Finally, appellant asserts that Article I, § 9 of the Texas Constitution affords greater protection than the Fourth Amendment in this context. Although Texas courts are not bound by Fourth Amendment precedent when interpreting Article I, § 9 of the Texas Constitution, *Heitman v. State*, 815 S.W.2d 681, 690 (Tex.Crim.App.1991), we find no authority requiring a more restrictive standard for reviewing investigative stops, arrests, or probable cause under Article I, § 9 than that required under the Fourth Amendment. *Murray v. State*, 864 S.W.2d 111, 115 (Tex.App.—Texarkana 1993, pet. ref'd). Absent an affirmative act of the Texas Legislature or decision by the Court of Criminal Appeals overruling earlier decisions in this area, this court will interpret Article I, § 9 as consistent with the interpretation of the Fourth Amendment by the United States Supreme Court and the Court of Criminal Appeals. *Id.* at 116 (citations omitted); *see State v. Grant*, 832 S.W.2d 624, 628 (Tex. App.—Houston [14th Dist.] 1992, pet ref'd).

Points of error five and six are overruled.

### Point of Error Seven

In his seventh point of error, appellant argues the evidence was legally insufficient to prove that he committed the charged offense. Specifically, appellant contends the evidence was insufficient (1) to support the jury's finding that appellant was guilty as either the primary actor or under the law of

parties, and (2) to prove aggravated robbery as opposed to aggravated assault.

When reviewing the legal sufficiency of the evidence, the appellate court will look at all of the evidence in a light most favorable to the verdict. *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App.1984); *Garrett v. State*, 851 S.W.2d 853, 857 (Tex. Crim.App.1993). In so doing, the appellate court is to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Ransom v. State*, 789 S.W.2d 572, 577 (Tex.Crim.App.1989), *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990). This standard is applied to both direct and circumstantial evidence cases. *Chambers v. State*, 711 S.W.2d 240, 245 (Tex. Crim.App.1986). The appellate court is not to reevaluate the weight and credibility of the evidence, but only ensure that the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App.1993), *cert. denied*, 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). The jury is free to believe or disbelieve any witness. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The sufficiency of the evidence is measured in light of the charge submitted to the jury. *Fuller v. State*, 827 S.W.2d 919, 931 (Tex.Crim.App.1992).

Appellant contends the evidence is insufficient to sustain his conviction as a party. In determining whether a defendant has acted as a party in the commission of a criminal offense, the jury may look to events occurring before, during and after the offense, and reliance may be placed upon actions which show an understanding and common design to engage in the illegal act. *Moore v. State*, 804 S.W.2d 165, 166 (Tex. App.—Houston [14th Dist.] 1991, no pet.). Mere physical presence at the scene is insufficient in and of itself to show intentional participation in the offense.[3] *Acy v. State*,

---

**3.** Appellant contends the evidence was insufficient to place him at the scene of the crime. We

618 S.W.2d 362, 365 (Tex.Crim.App.1981). Rather, the actions of the parties must show an understanding and common design to do the forbidden act. *Mayfield v. State*, 716 S.W.2d 509, 514 (Tex.Crim.App.1986). In the present case, the driver of the car sped up from behind the complainant, cut the complainant off, and waited in the car while the passenger got out and shot the complainant. The evidence that the driver of the Taurus sped up and cut off the complainant, preventing his escape, was sufficient to support the jury's finding that the driver, as well as the passenger, were involved in a common design. Although the complainant did not hear the two men speak to each other, "robbers working in tandem will not exculpate themselves by executing their crime in silence." *Moore v. State*, 804 S.W.2d 165, 166 (Tex. App.—Houston [14th Dist.] 1991, no pet.). We believe that a rational trier of fact could have found beyond a reasonable doubt that the appellant was guilty of the offense of aggravated robbery acting as a party.

Appellant argues that even if the evidence was sufficient to support his conviction as a party, the evidence was insufficient to prove that he was guilty of aggravated robbery as opposed to aggravated assault. We disagree. The complainant testified that the passenger in the Ford Taurus ran up to him with the shotgun and said, "Get out of my car." From this a rational fact finder could have found beyond a reasonable doubt that the intent of the gunman was to steal the complainant's truck.[4]

Point of error seven is overruled.

disagree. The complainant testified that, as he was driving down Old Richmond Road, he saw the lights of a Ford Taurus behind him and noticed one light was dimmer than the other or was off center. When the Taurus cut him off, complainant noticed that it was dark colored and there were two black men in the front seat. The passenger got out of the vehicle with a sawed-off shotgun, told the complainant to get out of the car, and then shot him in the right shoulder. The complainant recognized the gun taken from the car appellant was driving as being the same or similar to the one used in the incident.

Deputy Baker testified that the car he pulled over was a charcoal grey Ford Taurus with one headlight off center. When he pulled the appellant over, he discovered a sawed-off shotgun in

**Point of Error Eight**

In his eighth point of error, appellant contends the evidence was factually insufficient to support his conviction for aggravated robbery.

In conducting a factual sufficiency review, the appellate court considers all of the evidence without the prism of "in the light most favorable to the prosecution," and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 128–29 (Tex.Crim.App. 1996). In conducting a factual sufficiency review, an appellate court reviews the fact finder's weighing of the evidence and is authorized to disagree with the fact finder's determination. *Id.* This review, however, must be appropriately deferential so as to avoid an appellate court's substituting its judgment for that of the jury. *Id.* The appellate court must consider all of the evidence, both that which tends to prove a vital fact in evidence as well as that which tends to disprove its existence. *Id.* A factual insufficiency point should be sustained only if the verdict is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. *Id.*

Appellant points the court to certain alleged discrepancies in the trial testimony. Specifically, appellant claims (1) the testimony placed him at a basketball game at the time of the crime, (2) the vehicle he was driving was a light shade of grey as opposed to the dark color described by the complainant, (3) there was no evidence that appellant

the back seat. The testimony at trial revealed that a shotgun shell found at the crime scene came from the gun found in the vehicle appellant was driving. We find that the evidence was sufficient to place appellant at the scene of the crime.

4. Appellant argues that we should consider the outstanding reasonable hypothesis test and hold that, because there may have been an intent to shoot the complainant other than in connection with a theft, the evidence was insufficient to support a robbery conviction. As the State notes, however, the Court of Criminal Appeals has rejected this test in *Geesa v. State*, 820 S.W.2d 154, 155, 165 (Tex.Crim.App.1991), and we decline to apply it in the present case.

placed the gun in the back seat of the car or even knew it was there, (4) the shotgun shell recovered from the scene was found on the other side of Bellknap from where the shooting occurred, (5) there was no evidence of a common scheme, and (6) there was no evidence of an attempted theft.

◼ Although appellant's brother testified that, on the evening in question, the appellant was playing basketball until 9:00 p.m. and could not have been at the scene of the crime at 8:35 p.m., there was also testimony that appellant only played basketball until 8:15 or 8:20, which would have allowed him time to appear at the crime scene. In addition, although various witnesses described the car driven by appellant as light gray, gray, and charcoal gray, there was also testimony that appellant's vehicle had an off center headlight like the one involved in the crime. It is the role of the jury to pass on the weight or credibility of the witnesses' testimony and to resolve any conflicts therein. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992). Moreover, the jury was free to disbelieve any of the appellant's witnesses. *Sharp*, 707 S.W.2d at 614. There was ample evidence from which the jury could reasonably conclude that appellant was at the scene and the vehicle in which he was apprehended was used in the crime.

◼ Appellant claims there was no evidence that he placed the gun in the car or knew that it was there. However, the evidence revealed that the gun was in plain view on the back seat of the vehicle. The jury could reasonably infer that appellant, who was driving the vehicle, knew that the gun was in the car. Appellant next claims the shotgun shell was found on the wrong side of the street for it to have been expelled from the gun found in appellant's car. However, we do not have a sufficient record to determine on which side of the road the shell was found. Appellant never cross-examined the officer who found the shell as to its location, nor do we find any illustrative exhibits in the record. Even if the record established the shell's location, there is nothing to indicate the relevance of this information. The shell was found the morning after the incident in close proximity to where the crime occurred.

From this and other testimony the jury could reasonably infer that the shell was discharged during the aggravated robbery.

Finally, appellant argues there was no evidence of a common scheme and no evidence of a theft. However, as already stated, the testimony showed that the driver of the vehicle sped up and blocked the complainant while the passenger got out of the car and shot the complainant. From this evidence the jury could reasonably infer a common scheme. Moreover, the passenger's directive to the complainant to "Get out of my car" was sufficient for the jury to infer that the gunman intended to steal the truck. We do not find the verdict to be contrary to the great weight and preponderance of the evidence.

Point of error eight is overruled.

## Point of Error Nine

In his ninth point of error, appellant contends the trial court erred in entering an affirmative finding of a deadly weapon in the judgment. We agree and sustain this point.

The importance of an affirmative finding regarding use of a deadly weapon stems from the limitation on eligibility for parole contained in Tex.Code Crim.Proc.Ann. art. 42.18, § 8(b)(3)(Vernon Supp.1997); *Mulanax v. State*, 882 S.W.2d 68, 70–71 (Tex. App.—Houston [14th Dist.] 1994, no pet.). The statute provides that if the judgment contains an affirmative finding under Tex. Code Crim.Proc.Ann. art. 42.12 § 3g(a)(2), the prisoner is not eligible for parole until his actual calendar time served, without consideration of good conduct time, equals one-half of the maximum sentence or 30 calendar years, whichever is less, but in no event is he eligible for release on parole in less than two calendar years. An affirmative finding under Section 3g(a)(2) may be made when it is shown that:

... a deadly weapon ... was used or exhibited during the commission of a felony offense or during immediate flight therefrom, *and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited.*

TEX.CODE CRIM.PROC.ANN. art. 42.12 § 3g(a)(2) (emphasis added).

In the present case, the indictment charged that appellant "use[d] and exhibit[ed] a deadly weapon, to-wit, a firearm." The jury found appellant guilty "as charged in the indictment." There was also language in the jury charge that allowed the jury to convict appellant if he was acting individually or as a party to the offense.[5] No special issue was presented to the jury on appellant's use of a deadly weapon, and appellant elected to have the judge assess punishment. At the conclusion of the punishment hearing, the judge pronounced sentence and stated, "there will be a finding of a deadly weapon." The judgment, a pre-printed form filled out and signed by the trial judge, contains a section entitled "Affirmative Findings," which includes an entry "Deadly Weapon: Yes/No/N/A." The court circled "Yes," but did not make a specific finding that appellant personally used or exhibited a deadly weapon or knew that one would be used.

As a general rule, the trial court may enter an affirmative finding on use of a deadly weapon when the indictment alleges use of a deadly weapon, the weapon is deadly per se, or the fact finder affirmatively answers a special issue on the use of a deadly weapon. *Davis v. State,* 897 S.W.2d 791, 793 (Tex.Crim.App.1995); *Polk v. State,* 693 S.W.2d 391, 394–95 (Tex.Crim.App.1985). However, when the jury charge authorizes the jury to convict the defendant as either a principal or a party, "the affirmative finding must show that *the appellant* used or exhibited the deadly weapon." *Flores v. State,* 690 S.W.2d 281 (Tex.Crim.App.1985) (emphasis in original). This line of authority was established at a time when the statute allowed an affirmative deadly weapon finding only when *the defendant* used or exhibited a deadly

weapon during the commission of the offense, and did not address culpability under the theory of parties.[6] *See Polk,* 693 S.W.2d at 394 n. 2. The statute was amended in 1991 to allow an affirmative deadly weapon finding where the defendant was a party to the offense and knew that a deadly weapon would be used or exhibited. TEX.CODE CRIM. PROC.ANN. art. 42.12 § 3g(a)(2). Thus, the amendment allowed for an affirmative finding when the theory of parties was presented. In *Pritchett v. State,* 874 S.W.2d 168, 172 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd), this court interpreted the amended provision to require an express finding that appellant *knew* a deadly weapon would be used or exhibited when the law of parties was applied.

The State claims *Pritchett* should be reconsidered because the court failed to recognize that the 1991 amendment to Article 42.12, § 3g(a)(2) made a specific finding unnecessary. Because the amended statute expressly allows a deadly weapon finding under the law of parties, the State argues, an affirmative finding may be entered when a defendant is determined to have been a knowing participant to an offense involving the use or exhibition of a deadly weapon. In the present case, the State claims the jury "necessarily found" that appellant was either the primary offender or a knowing participant to the offense, and therefore it was appropriate for the trier of fact at punishment to enter an affirmative deadly weapon finding. We disagree. In *Polk,* the Court of Criminal Appeals rejected a similar request by the State to infer an "implied" finding or an "amounts to" finding in lieu of an express finding under the statute. *Id.* at 396. The court reviewed the legislative history of Article 42.12, and noted that it was intended to assist the Texas Department of Corrections in determining

---

5. The jury charge read, in pertinent part, as follows:

> Now, if you find from the evidence beyond a reasonable doubt that ... [appellant] did then and there ... use or exhibit a deadly weapon, to-wit, a firearm; *or* if you find from the evidence beyond a reasonable doubt that ... another person or persons, did then and there ... use or exhibit a deadly weapon, to-wit, a firearm, and that [appellant], with the intent to promote or assist the commission of the of-

fense ... solicited, encouraged, directed, aided or attempted to aid the other person or persons to commit the offense ... then you will find [appellant] guilty of aggravated robbery as charged in the indictment.

6. Acts 1977, 65th Leg. p. 925, ch. 347, § 1 (amended 1991) (current version at TEX.CODE CRIM.PROC.ANN. art. 42.12 § 3g(a)(2) (Vernon Supp.1997)).

whether or not a deadly weapon had been used by the defendant so that they could accurately compute the defendant's time for parole purposes. *Id.* at 394 n. 1. Allowing "implied" findings or "amounts to" findings "resurrects for appellate courts the very problem faced by the Texas Department of Corrections ... that is: How is the finding to be determined?" *Id.* at 396. By adding the words "affirmative finding" to the statute, the Legislature "meant to save all of us from sinking ever deeper into the quagmire of whether differing indictment/verdict/fact situations amounted to 'implied' findings or not." *Id.*

■■■ We see no reason why the court's reasoning in *Polk* should not apply to the 1991 amendment. Although it is true that the amendment allowed an affirmative deadly weapon finding when the jury is charged under the law of parties, it also expressly required a finding that the defendant *knew* a deadly weapon would be used or exhibited:

> [affirmative finding may be made when] the defendant used or exhibited the deadly weapon or *was a party* to the offense *and knew* that a deadly weapon would be used or exhibited.

TEX.CODE CRIM.PROC.ANN. art. 42.12 § 3g(a)(2) (emphasis added). In *Mulanax,* this court reaffirmed that an express finding was required under the amendment:

> The specificity requirement also applies to the recent amendment of Article 42.12 § 3g(a)(2). In other words, since a party may now receive an affirmative finding of a deadly weapon when he knew that a deadly weapon would be used or exhibited, the affirmative finding must state that the appellant knew that a deadly weapon would be used or exhibited. *See Pritchett,* 874 S.W.2d at 173. A finding that a deadly weapon was used is not proper and should be deleted. *Flores,* 690 S.W.2d at 283. Without the deletion, the judgment implies that the appellant used or exhibited a deadly weapon. *See Travelstead,* 693 S.W.2d at 402. In order for an affirmative finding to stand on the law of parties, there must have been a specific finding that appellant knew a deadly weapon would be used or exhibited.

882 S.W.2d. at 71. We see no reason to depart from this analysis or reconsider *Pritchett* as requested by the State. Point of error nine is sustained.

This court has the authority to reform the decree by redacting the affirmative weapon finding. *Davis,* 897 S.W.2d at 794. Accordingly, we strike from the judgment reference to the appellant's use and exhibition of a deadly weapon and, as reformed, affirm the judgment of the trial court.