TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00439-CR







Rodney Earle Drews, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT


NO. 45,953, HONORABLE C.W. DUNCAN, JR., JUDGE PRESIDING







A jury found appellant Rodney Earle Drews guilty of murder and assessed punishment at
imprisonment for thirty-three years and a $10,000 fine. Tex. Penal Code Ann. § 19.02(b)(1), (2) (West
1994). Drews contends that the evidence is legally and factually insufficient to sustain the conviction, that
the district court erroneously overruled his motion to suppress evidence, and that the record does not
support the recital in the judgment that he used a deadly weapon in the commission of the offense. We will
delete the deadly weapon finding and affirm the judgment of conviction as modified.

The deceased, Jesse Sanchez, worked the 3:00 to 11:00 p.m. shift at a manufacturing plant
in Temple. Gloria Sanchez, Jesse's wife, testified that she heard her husband arrive home about midnight
on the night of September 23, 1995. It was his custom to sit in his truck, drink beer, and listen to music
before entering the garage apartment where they lived. Some time later, Gloria Sanchez heard a second
vehicle drive down the alley by the apartment. Soon after, she heard noises and what sounded like a
person calling for help. She went outside to investigate, seizing a wooden hoe handle as she did so. She
discovered her husband lying on the ground with two men standing beside him. A third man was running
toward a white pickup truck parked nearby. She recognized one of the men near her husband as
Salvadore Rodriguez. When Rodriguez saw her, he also began to run toward the pickup truck. Gloria
Sanchez struck the other man, who was wearing a leather jacket, on the back with the hoe handle. The
man turned and looked at her, then fled to the white pickup. She heard the sound of a heavy object being
thrown into the bed of the truck.

Jesse Sanchez had been badly beaten. His wife helped him into the apartment, then went
to a nearby store to call for help. Police and emergency medical personnel soon arrived. Jesse Sanchez
was bleeding from large cuts on his legs, and from a cut on the back of his head. He told the police that
two men held him down while Rodriguez beat him with an automobile jack. He was taken to a hospital,
where serious abdominal injuries were discovered. A laceration of the right kidney was sutured and his
spleen was removed. Jesse Sanchez died in the hospital on October 1. The medical examiner identified
the cause of death as blunt force injuries of the abdomen.

Gloria Sanchez testified that Rodriguez and the man in the leather jacket had come to the
apartment the day before the assault on her husband. On that occasion, Rodriguez told her that Jesse
Sanchez had been "messing around" with his wife and that "he was going to beat [him] up, break both of
his legs, and he needed friends to help him do it . . . ." Gloria Sanchez was not asked to formally identify
Drews at trial, but she indicated during both direct and cross-examination that Drews was the man with
Rodriguez on September 22 and the man she hit with the hoe handle on the night of the assault.

Jimmy Baladez testified that he spent September 23 drinking beer with Rodriguez and
Drews at Drews's trailer house. That night, Rodriguez said he wanted to go to Jesse Sanchez's house and
slash his tires. The three men drove to the Sanchez residence in Baladez's orange and white pickup. Upon
arrival, Rodriguez got out, apparently to go slash Sanchez's tires, while Baladez waited in the truck. 
Baladez heard a struggle and ran to Rodriguez's aid. He found Sanchez and Rodriguez wrestling on the
ground. Sanchez was choking Rodriguez with a jack. Baladez pulled Sanchez away from Rodriguez. At
this point, Drews began to hit Sanchez with his fists. Rodriguez managed to gain control of the jack and
began to strike Sanchez with it. Baladez ran back to the pickup as the other men continued to assault
Sanchez. Drews and Rodriguez ceased their assault only after Gloria Sanchez appeared with the hoe
handle. As they drove back to Drews's trailer, both Drews and Rodriguez told Baladez that they "messed
him [Sanchez] up."

Drews's former wife, Willie Mae Morales, testified that Drews told her in October 1995
that he had witnessed an assault in Temple. According to Drews's account, the assailant was beating the
victim with a tire tool. When Drews attempted to stop the assault, a woman hit him on the head with a
stick, briefly knocking him unconscious. When he regained consciousness, he examined the victim of the
assault and determined that he was alive. Drews told Morales that the beating grew out of a dispute over
a woman.

Drews's challenge to the legal sufficiency of the evidence consists of an attack on the
credibility of Gloria Sanchez and Jimmy Baladez. He points to evidence that Sanchez twice failed to
identify him in photographic lineups. Drews argues that Baladez should not have been believed because
he admitted drinking at least twenty-four beers on the day in question. Drews also stresses that no one
testified to seeing him strike the deceased in the abdomen or with a tire iron or jack.

In determining the legal sufficiency of the evidence to support a criminal conviction, the
question is whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier
of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991); Griffin v.
State, 614 S.W.2d 155 (Tex. Crim. App. 1981). The jury is the exclusive judge of the credibility of the
witnesses and the weight to be given their testimony, and may accept or reject all or any part of the
evidence. Miller v. State, 909 S.W.2d 586, 593 (Tex. App.--Austin 1995, no pet.). The district court
instructed the jury on the law of criminal responsibility for the conduct of another and authorized Drews's
conviction both as the primary actor and as a party to the offense. See Tex. Penal Code Ann. §§ 7.01,
7.02 (West 1994). Viewed in the light most favorable to the jury's verdict, the evidence is clearly sufficient
to support a finding beyond a reasonable doubt that Drews was a party to the murder of Jesse Sanchez. 
Point of error one is overruled.

When conducting a factual sufficiency review, we do not view the evidence in the light most
favorable to the verdict. Instead, we consider all the evidence equally, including the testimony of defense
witnesses and the existence of alternative hypotheses. Orona v. State, 836 S.W.2d 319, 321 (Tex.
App.--Austin 1992, no pet.). We will set aside a verdict for factual insufficiency only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State 922
S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin
1992, pet. ref'd as untimely filed). Drews argues that there are three reasonable alternative hypotheses
inconsistent with a finding of guilt. First, citing Baladez's testimony that Sanchez was choking Rodriguez
with the jack, he suggests that Sanchez was killed in self-defense. Alternatively, Drews argues that his
statements to Morales support the conclusion that he was an innocent bystander who was mistakenly
identified as an assailant. Finally, Drews points to the medical examiner's testimony that Jesse Sanchez had
cirrhosis of the liver, a condition that made his internal bleeding worse than it otherwise would have been. 
Drews asserts that this testimony supports a finding that the assault was not the cause of Sanchez's death.

The court's charge included an instruction on causation. See Tex. Penal Code Ann. §
6.04(a), (b)(1) (West 1994). No instruction on self-defense was requested or given. Considering all of
the evidence in the case, including Drews's self-serving statements to Morales and the other evidence that
might be deemed favorable to the defense, we conclude that the jury's finding of guilt was not manifestly
unjust. Point of error two is overruled.

In his third point of error, Drews contends his motion to suppress evidence seized during
a search of his residence should have been granted. He argues that the search was conducted without a
warrant and without the effective consent of any person authorized to give consent. He does not, however,
identify any evidence introduced at trial that was seized during the challenged search. None of the exhibits
introduced by the State came from Drews's residence. There was no testimony before the jury regarding
the contents of Drews's trailer. In the absence of a showing that the evidence sought to be suppressed was
introduced at trial, the propriety of the court's ruling on the motion to suppress is moot and no error is
presented. Point of error three is overruled.

The district court's judgment states that an affirmative finding was made that a deadly
weapon was used in the commission of the offense. In his final point of error, Drews contends that no such
finding was made and asks that this recital be deleted from the judgment.

When an affirmative finding is made that a deadly weapon was used or exhibited during the
commission of a felony offense, and that the defendant either personally used or exhibited the deadly
weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited, the
district court is required to so state in its judgment. Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2)
(West Supp. 1998). When a jury is the trier of fact at both stages of trial, the jury must make the
affirmative finding. Barecky v. State, 639 S.W.2d 943, 945 (Tex. Crim. App. 1982); see Fann v. State,
702 S.W.2d 602, 604-05 (Tex. Crim. App. 1986) (opinion on motion for rehearing).

In this cause, the court did not submit the deadly weapon question to the jury as a special
issue. See Travelstead v. State, 693 S.W.2d 400, 402 (Tex. Crim. App. 1985) (special issue is preferred
procedure when jury is trier of fact); Blondett v. State, 921 S.W.2d 469, 476-77 (Tex. App.--Houston
[14th Dist.] 1996, pet. ref'd) (special issue submitted). Although the indictment expressly alleged that
Drews used a deadly weapon, and the jury found Drews guilty "as charged in the indictment," the verdict
did not constitute an affirmative finding that Drews personally used or exhibited a deadly weapon because
the court authorized Drews's conviction as a party to the offense. Compare Reyes v. State, 741 S.W.2d
414, 432-33 (Tex. Crim. App. 1987), with Polk v. State, 693 S.W.2d 391, 396 (Tex. Crim. App.
1985). The jury's verdict also does not constitute an affirmative finding that Drews was a party to the use
of a deadly weapon because the court's parties charge did not require a finding that he knew that a deadly
weapon would be used or exhibited during the offense. Broden v. State, 923 S.W.2d 183, 191 n.9 (Tex.
App.--Amarillo 1996, no pet.). While it could be argued that the jury impliedly found that Drews was a
party to an offense in which he knew that a deadly weapon would be used, an implied finding does not
constitute the "affirmative finding" required by the statute. Tate v. State, 939 S.W.2d 738, 753-54 (Tex.
App.--Houston [14th Dist.] 1997, no pet.); see Polk, 693 S.W.2d at 396. We hold that the jury did not
make an article 42.12, section 3g(a)(2) affirmative finding, and that the district court therefore erred by
entering such a finding in its judgment. Point of error four is sustained.

The district court's judgment is modified to delete the finding that a deadly weapon was
used or exhibited during the commission of this offense. (1) As modified, the judgment of conviction is
affirmed.




 Bea Ann Smith, Justice

Before Justices Powers, Aboussie and B. A. Smith

Modified and, as Modified, Affirmed

Filed: December 18, 1997

Do Not Publish
1. This modification of the judgment may be of little practical benefit to Drews in light of his
conviction for murder. See Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(1)(A) (West Supp. 1998);
Tex. Gov't Code Ann. § 508.145(d) (West Supp. 1998).



ess evidence seized during
a search of his reside